Private Michael Leonard HELWICK

v.

Melvin LAIRD as Secretary of Defense, Stanley Resor as Secretary of the Army, Major General George Ruhlen as Commanding General, Fort Sam Houston, Texas, and Colonel Charles Pixley as Commanding Officer of U. S. Army Medical Training Center, Fort Sam Houston, Texas, and Major Donald Conrad as Commanding Officer of Headquarters, Headquarters Company, Receiving and Holding Medical Training Center, Fort Sam Houston, Texas.

Civ. A. No. SA70CA128.

United States District Court,
W. D. Texas,
San Antonio Division.

April 27, 1970.

On Reconsideration of Order Granting New Trial June 15, 1970.

Maury Maverick, Jr., and Gerald H. Goldstein, San Antonio, Tex., for plaintiff.

Seagal V. Wheatley, U. S. Atty., and Hugh Patrick Shovlin, Asst. U. S. Atty., San Antonio, Tex., for defendants.

## MEMORANDUM

SPEARS, Chief Judge.

Petitioner in this habeas corpus proceeding contends that he is unlawfully restrained and deprived of his liberty by the respondents, because the Department of the Army denied his request that he be discharged from the United States Army as a conscientious objector. He claims that he was disapproved as a conscientious objector for the following sole reason: "Applicant does not truly hold views against participation in war in any form which are derived from religious training and belief."

It appears that petitioner applied for and was granted a Conscientious Objector 1-A-O classification by Local Board Number 156, Selective Service System, New Orleans, Louisiana, prior to entry into the Armed Forces. On or about September 29, 1969, he was inducted into the Armed Forces, and was subsequently transferred to Fort Sam Houston, Texas on or about October 6, 1969. Thereafter, on or about January 12, 1970, he made application for separation and discharge from the United States Army as a conscientious objector, pursuant to Army Regulation No. 635-20, which states in part: "This regulation sets forth the policy, criteria, and procedures for disposition of military personnel who, by reason of religious training and belief, claim conscientious objection to participation in war in any form. * * * Requests for discharge after entering military service will not be accepted when—* * * (3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code." See Title 50 U.S.C.A. App. Section 456(j).

An examination of the record reveals that the petitioner was interviewed by the Chaplain, who stated: "It is my opinion that this man is sincere, he does hold religious teachings; however, the *depth and maturity of his views would preclude the 1-O classification.*" (Emphasis supplied). Reports from other interviews with the Psychiatrist and Officers of the Armed Forces indicate that petitioner's views are naive and lack the maturity which warrants a 1-O classification; are basically his own personal and moral code; and are based on a philosophical code that petitioner has adopted for himself. The Psychiatrist reported: "This EM has been raised a Catholic and, although presently drifting somewhat away from that church, he still considers himself a Christian and he feels that most of his feeling regarding fellowship and love of other individuals is based on his Christian upbringing." In another interview, it was reported that petitioner could not say whether or not there was a God, and that petitioner could not accept the basic premises of Catholicism.

It has been repeatedly stated that a petitioner's *sincerity* becomes the ultimate question in cases involving conscientious objectors. And, as stated by the Supreme Court, " * * * we hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question of whether it is 'truly held'. *This is the threshold question of sincerity which must be resolved in every case.* It is, of course, a question of fact—a prime consideration to the validity of every claim for exemption as a conscientious objector." (Emphasis supplied). United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733. Inasmuch as petitioner has stated that he had no real religious principles at all for a long time when he was in college; that he thought mainly of himself and of his own personal happiness; that his resentment of the depersonalized nature of the institutionalized church made him sever his connections with the Catholic Church; and that his religious guidance came from reflection, and from heart-to-heart discussions with close personal friends, this Court is of the opinion that there is a basis in fact for the decision by the Military Board. Dugdale v. United States, 389 F.2d 482. It is clear that petitioner's rejection was based on the ground that his professed religious

belief was not "truly held", and not on the ground that he had severed his connections with the Catholic Church, or that he could not say whether or not there was a God. In his application for discharge by reason of conscientious objection petitioner no doubt was sincere in disclosing his temporary rejection of religious principles, and in stating his guiding religious principle, namely, the Christian principle of love; however, the "depth and maturity" of his views preclude a finding that his belief is "truly held" and that he is entitled to the right of exemption, which is a matter of legislative grace.

In a letter written by the United States Attorney to counsel for petitioner prior to the trial of this cause, the ground hereinabove discussed was the only one given for the disapproval of petitioner as a conscientious objector; however, the opinion of the Board of Review reflects an additional ground to the effect that petitioner's self-serving claim that his views have changed subsequent to his entry into the active military service was not supported by a substantial change in his professed religious beliefs subsequent to his 1–A–O classification. Nevertheless, petitioner insists that the Army is "stuck" with the sole ground stated in the letter of the United States Attorney, and has refused to agree that petitioner's Selective Service file may be received in evidence, "because it was a matter not before the Army Review Board at Washington." [1]

It is interesting to note that in the brief submitted in support of defendants' original answer it was stated that on August 28, 1969 petitioner was notified to report for induction on September 29, 1969, but that on September 16, 1969, prior to his entry into the active military service, petitioner made one last effort for deferment by writing a letter to his draft board stating that "in the last few days he had learned that medics were instructed to minister to those who were capable of returning to combat duty before those who were not, that medics had to carry weapons to protect themselves, and that a medic must care for his own wounded prior to the enemy wounded."

Obviously, if petitioner had expressed his "new position" subsequent to his classification as 1–A–O on July 23, 1969, but before his entry into active military service on September 29, 1969, this would constitute a direct conflict with his claim that his views changed subsequent to entering the active military service. By the same token, his "new position" as possibly reflected in his "letter" to the draft board subsequent to his classification as 1–A–O, but before his entry into the active military service, might very well cast serious doubt upon the correctness of the Review Board's finding that there is "no indication that there has been a substantial change in his professed religious beliefs subsequent to his 1–A–O classification". See United States v. Balderrama, 304 F. Supp. 822 (W.D.Tex.1969).

Undoubtedly, the Selective Service file would shed considerable light on the situation. For one thing, the full contents of petitioner's "letter" of September 16, 1969 could be revealing, and certainly the action thereon, if any, taken by the draft board, would be pertinent to the question as to whether or not petitioner's rights were violated by a refusal, if any, to reopen the matter, assuming such a request was made.[2]

1. See Maverick letter to the Court dated April 24, 1970. Upon a study of the case after it was submitted, this Court, feeling that all files pertinent to the pleadings and briefs should be before the Court, suggested to counsel on both sides that the Selective Service file should be in evidence, even though neither counsel had considered it important during the trial. Government's counsel agreed but, as indicated, petitioner's counsel refused to agree.

2. Since the "letter" was purportedly written after petitioner was notified on August 28, 1969 to report for induction, it would have been necessary for him to show a change in status resulting from circumstances over which he had no control. 32 C.F.R. § 1625.2. The record before

■ As the situation now stands, this Court is prohibited from considering the Selective Service file, but is of the opinion that since *two* grounds were set forth in the opinion of the Review Board, and petitioner has not shown where he has been prejudiced by the United States Attorney's letter,[3] it is incumbent upon the Court to make a ruling with respect to *both* grounds. As a consequence, this Court finds from the evidence introduced that there is a basis in fact for the Review Board's conclusion that there is "no indication that there has been a substantial change in his (petitioner's) professed religious beliefs subsequent to his 1–A–O classification." Petitioner was on active duty only 2½ months before making his application for discharge as a conscientious objector. As the Board said, "It is unlikely that his views would change during this short exposure to the military service", particularly when one considers that petitioner is a college graduate, and there has been a finding that his belief is not "truly held". The Court expresses no opinion as to what the result would be if the Selective Service file had been received in evidence.

The petition for writ of habeas corpus is denied.

the Court is not only silent as to the contents of the letter, and whether or not it constituted a prima facie showing of a change in status resulting from circumstances over which he had no control, but also with respect to whether or not the draft board specifically found there had been such a change in his status, and if the finding was in the negative, whether or not it was arbitrary and unreasonable under the circumstances. See Magaro v. Major-General Cassidy et al., 426 F.2d 137 (5 Cir. April 23, 1970, No. 27940.)

3. Although petitioner's counsel contended that the Assistant United States Attorney had refused to let him see the Review Board's opinion, the charge was vigorously denied with positive assertion that the complete file was made available to petitioner's counsel, as directed by the Court, well in advance of the trial of this cause. In any event, no request was made of the Court for the disclosure of any materials withheld in violation of the Court's instructions.

## ON RECONSIDERATION OF ORDER GRANTING NEW TRIAL

After having given further consideration to this cause, including the pleadings and briefs filed subsequent to the order of May 7, 1970 granting petitioner's motion for new trial, this Court is of the opinion that the denial of the petition for writ of habeas corpus, reflected in the memorandum of April 27, 1970, should stand.

■ In said memorandum the conclusion was expressed that the Selective Service File could not be considered, because it had not been received in evidence. However, since petitioner's beliefs before and after his induction into the military service were placed in issue by him when he applied for separation and discharge, the Selective Service File will be considered in the interest of fundamental fairness and justice. To do otherwise would allow the petitioner to take advantage of a "self-serving claim" before the Review Board that his views had changed subsequent to his entry into the active military service, but deny to this Court the right to refer to the complete record in order to ascertain whether or not his claim is accurate.[4]

4. Certainly the Selective Service File of a registrant is an "official" record accessible to the Court and to the Military Review Board as well in those instances where the claim of conscientious objection is being made on the ground that a registrant's views have changed subsequent to his entry into the active military service. What better source than the registrant's file can be found from which to obtain pertinent information relative to the beliefs expressed by a registrant prior to his induction, in order that it may be compared with what is said by him subsequent to his induction? This is particularly true when the beliefs expressed before and after induction constitute the basis upon which the issue submitted by the registrant-petitioner to the Court is predicated. In such a case the petitioner is the last person in the world who should be allowed to object to the examination of pertinent portions of the file, without which his Selective Service and military record would be incomplete, on the techni-

It should be borne in mind that petitioner had been admitted to the Graduate School of Tulane University, prior to entering the military service. He had been awarded a National Defense Education Act fellowship, which, according to a professor at Tulane University, meant that petitioner was considered to be in the top four or five of their incoming class of graduate students. So we are dealing here with someone who is highly intelligent and well educated.

In a "statement" submitted to the Review Board in connection with his application for separation and discharge, petitioner said in part:

"*  *  *  before I entered the army I had resolved never to permit myself to be placed in a combat situation— *even as a medic.*  *  *  *  My belief now is that to participate in the military in any way—even in the non-combatant elements of the medical branch

—is contrary to the principle of Christian love.  *  *  *  I now realize that the army is a complex organization made up of many parts, all functioning together as a whole. Without any one of these parts, it cannot function properly. The medical branch is simply one of the parts without which the army cannot function." (Emphasis supplied).

An examination of the letter of September 16, 1969 in his Selective Service File reveals that *after he had received his order to report for induction,* petitioner had expressed himself to the local board in similar fashion as follows:

"When I received my I–A–O classification, my conscience was satisfied.  *  *  *  I had the naive idea that a medic was totally uninvolved in killing and that his only function was to minister to the injured as best as he knew how. However, in the last few days

cal ground either that the file itself was not before the Review Board, or that it was not offered and received in evidence before the Court. By the very nature of the procedures followed pursuant to applicable military regulations, information contained in petitioner's Selective Service File was before the Review Board, whether the file was physically present or not. This is so because of the self-serving statements of the petitioner himself, reflected in his application for separation and discharge, and in the various interviews conducted by military officers. It would be unconscionable to say that even though the petitioner opened the door and used what he thought was beneficial to him, the Court of the Review Board is prohibited from examining his file to determine the validity of his representations. Respondents also refer to the proceedings before the local board, as well as the "letter" written by petitioner on September 16, 1969, when, in their brief in support of their original answer they say in part: "The *record* reveals that Helwick at his request was granted a I–A–O rating on July 23, 1969 by his local draft board.  *  *  *  He duly filed his Form 150 and on July 23, 1969, he received the requested classification of I–A–O. Thereafter on August 28, 1969, he was notified to report for induction on September 29, 1969. He made one last effort for deferment as on September

16, 1969, he wrote a letter to his draft board stating that in the last few days he had learned that medics were instructed to minister to those who were capable of returning to combat duty before those who were not, that medics had to carry weapons to protect themselves and that a medic must care for his own wounded prior to ministering to the enemy wounded. He was inducted on September 29." (Emphasis supplied). Obviously, therefore, respondents are in no position to complain about the Court examining the Selective Service File of petitioner. In the circumstances of this case, the Selective Service File of petitioner was a legitimate source from which information could be obtained to assist the Court in reaching a decision, even though the file itself was not offered and received in evidence. The situation in this case is obviously unlike that in Bates v. Commander, First Coast Guard Dist., 413 F.2d 475 (1st Cir. 1969) footnote 2, wherein there was nothing to indicate that the psychiatrist's report was relied upon by the Commandant in reaching his determination. Here, of course, the direct issue concerning petitioner's beliefs prior to and after his induction was dealt with by the Review Board. Under the circumstances, even though the Selective Service file was not formally introduced into evidence, it was for all practical purposes before the Court for examination and consideration.

I have done some inquiring; and I have found that I had some wrong ideas about a medic's function in the military. I have discovered that, in time of combat, medics are ordered to minister first to those who are most capable of continuing on with the fighting. * * * In addition to this, I have discovered that many medics actually have to carry guns in order to protect themselves and those to whom they are ministering. * * * This new information has caused me to re-evaluate my position regarding my I–A–O classification. My former idea of a medic was that of a man apart from the war who did his best to save the lives of injured soldiers. * * * I find these actions which a medic is obliged to perform during combat morally reprehensible. These actions are not manifestations of a loving concern to help injured men but are aimed at actually furthering the war effort. For this reason, I ask you to re-open my case and change my classification to I–O."

Apparently the draft board felt that petitioner had failed to present a "prima facie" case, from which it could be found that there had been a change in his status resulting from circumstances over which he had no control, since his request for a change in his classification was disapproved.[5] See Magaro v. Cassidy, 426 F. 2d 137, (5th Cir. 1970), reversing Magaro v. Commanding Officer, etc., 308 F.Supp. 889 (W.D.Tex.1969). In Magaro the petitioner had requested a reclassification before receipt of his order to report for induction, which brought into play all applicable portions of 32

C.F.R. § 1625.2, except the proviso dealing with the reopening of a classification after the local board has mailed to the registrant an order to report for induction; whereas, in the instant case all of the regulation referred to is applicable, including said proviso, because the letter of September 16, 1969 requesting the reopening of the classification was written after petitioner had received his order to report for induction.

A reading of said letter, and petitioner's application for separation and discharge from the army, demonstrates that his views had not changed subsequent to his entering the active military service. On the contrary, the letter established beyond doubt that his views prior to induction were almost identical to those expressed by him after his induction into the military. In this connection, it is significant that petitioner never mentioned the letter in his application for separation and discharge from the army.

Even if the consideration of the Selective Service File, for the purpose indicated, was improper this Court finds from the evidence introduced that there was and is a basis in fact for the conclusion that there has not been a substantial change in petitioner's professed religious beliefs subsequent to his entry in the military service.[6] Similarly, this Court adheres to its original holding that there was and is a basis in fact for the finding of the Review Board that petitioner does not truly hold views against participation in war in any form which are derived from religious training and belief.

The order of May 7, 1970 granting petitioner's motion for new trial is set aside, and the said motion is hereby de-

5. No attack, however, was made upon the local board's action in refusing to reopen the case and change petitioner's classification, either in the original pleadings or those filed after this Court authorized the filing of additional pleadings in the order granting the motion for new trial on May 7, 1970.

6. As a matter of fact, petitioner himself said in effect that his views had not changed substantially, when, in his application for separation and discharge, he stated: "My written expression was given in my application to my draft board for a I–A–O classification. In it I express views similar to those in this application." (Emphasis supplied). Also, as has been noted above in the body of this opinion, petitioner affirmatively stated that before he entered the army he had resolved never to permit himself to be placed in a combat situation, "even as a medic."

nied; provided, however, all pleadings and briefs filed subsequent to the entry of that order shall constitute a part of the record herein.

The stay order heretofore entered by this Court on April 27, 1970, and extended "pending further orders of this Court" on May 7, 1970, is hereby dissolved; provided, in the event a notice of appeal is filed within ten (10) days from this date, a further stay shall automatically become effective for an additional period of twenty (20) days to allow petitioner to seek further relief from the Appellate Courts. However, in no event shall this order be extended beyond the total period of thirty (30) days hereinabove referred to unless by action of the Appellate Courts.

Entered at San Antonio, Texas this 15th day of June, 1970.