**Private Michael Leonard HELWICK, Petitioner-Appellant,**

v.

**Melvin LAIRD as Secretary of Defense et al., Respondents-Appellees.**

**No. 30059.**

United States Court of Appeals, Fifth Circuit.

Feb. 16, 1971.

Maury Maverick, Jr., San Antonio, Tex., for appellant.

Seagal V. Wheatley, U. S. Atty., Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., for appellees.

Before WISDOM, THORNBERRY, and DYER, Circuit Judges.

WISDOM, Circuit Judge:

Private Michael Leonard Helwick appeals from an order of the district court denying his petition for writ of habeas corpus on the ground that the Army wrongfully denied his application for discharge from the service as a conscientious objector. We reverse and remand with directions that the district court

grant Helwick's prayer for habeas corpus relief.

## I.

Helwick was inducted into the United States Army on September 29, 1969. Before induction, he applied for and received a I-A-O classification as a conscientious objector[1] from his local draft board. On January 15, 1970, however, he filed an application with the Army at Fort Sam Houston, Texas, for discharge as a I-O conscientious objector.[2]

In his request for discharge as a I-O conscientious objector, Helwick set out the basis for his claim. He was the son of Roman Catholic parents and raised as a devout Catholic. He attended Catholic elementary and secondary schools and entered a Catholic university. As a youth, however, he was not entirely happy with his religious training. He resented "the depersonalized nature of the institutionalized church" and the church's "overstressing of the negative side of the religious life". Upon entering college he severed his connections with the Catholic church. This too was unsatisfactory in terms of living with himself. Unhappy with his state of mind, he became attracted once again to the fundamental religious principles he had learned as a youth. In his own words,

> I now saw that the only way to true happiness was to be found in showing a loving concern for my fellow man—in adhering to the Christian principles which had been imbedded in me when I was young. I now saw Christian religious principles as a positive force, rather than as a negative one as I had in my youth. From all my previous religious training, I sifted out what I felt to be the essential part of all my training—namely, the Christian principle of love. This became my guiding religious principle, and I resolved to use this religious principle to determine how I would conduct my life in the future.

While in graduate school, Helwick applied for and obtained a I-A-O classification as a conscientious objector from his local draft board. He explained that action in this way: although morally opposed to participation in combat as contrary to the Christian principle of love, he believed that it was in accordance with Christian principles to participate as a noncombatant in the medical branch of the Army. He found the medical branch acceptable to his religious beliefs because he thought "its main purpose was a loving concern to heal the injured participants of war."

In September 1969 Helwick was inducted into the Army and sent to basic training at the United States Army Medical Training Center at Fort Sam Houston, Texas. As a result of his experience at the special training center for noncombatants, his view of the Medical Corps changed:

> Since I entered the army, however, my belief as to what constitutes following the Christian principle of love has changed. My belief now is that to participate in the military in any way —even in the noncombat elements of the medical branch—is contrary to the principle of Christian love. This is so because my time in the army has made me realize that, without the medical branch, there can be no army —that, by participating even in the

---

1. 32 C.F.R. § 1622.11 provides

> In Class I–A–O shall be placed every registrant who would have been classified in Class I–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to combatant training and service in the armed forces.

*See* United States ex rel. Healy v. Beatty, 5 Cir. 1970, 424 F.2d 299, 300 n. 3.

2. 32 C.F.R. § 1622.14 provides

> In Class I–O shall be placed every registrant who would have been classified in Class I–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces.

*See* United States v. Carroll, 3 Cir. 1968, 398 F.2d 651, 653.

noncombat elements of the medical branch, I am personally allowing the army to carry on in its function of killing human beings. I realize that my purpose is not really to give loving care to the injured but to aid in insuring that the continuous cycle of killing never stops. I now realize that the army is a complex organization made up of many parts, all functioning together as a whole. Without any one of these parts, it cannot function properly. The medical branch is simply one of the parts without which the army cannot function. It is just as much a part of the army as the infantry, which carries on the fighting. This is dramatically illustrated to the motto of the Army Medical Service: "To conserve the fighting strength."

Consequently, I now find participation in the army in any capacity—even the noncombat elements of the medical branch—contrary to my religious beliefs.

This change of view prompted Helwick to apply in January 1970 for discharge under Army Regulation 635–20 as a I-O conscientious objector—i. e., one conscientiously opposed to both combatant and noncombatant military service.[3] AR 635–20 sets forth the policy, criteria, and procedures for the disposition of conscientious objector claims of active military personnel. The Regulation requires the Army to consider "requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service." AR 635–20(3) (a). To coordinate with the Selective Service System, however, the Army will not consider claims based on conscientious objection growing out of experiences before entering military service unless that objection did not become fixed until after entry into the service. AR 635–20(3) (b).

Under the Regulation, a chaplain, a psychiatrist, and a hearing officer interviewed Helwick. Based on the results of these interviews and Helwick's statements in his application, his unit commander recommended disapproval of Helwick's application. Helwick's battalion commander, the Medical Training Center commander, and the post commander routinely endorsed the recommendation of the unit commander and forwarded Helwick's application to the Conscientious Objector Review Board.

On March 24, 1970, the Conscientious Objector Review Board denied Helwick's request for discharge as a I-O conscientious objector. In a written opinion the Board assigned two grounds for its decision: (1) that Helwick does not "truly hold" views against participation in war in any form which are derived from religious training and belief, and (2) that Helwick's views have not changed subsequent to his I-A-O classification and entry into military service so as to entitle him to discharge under AR 635–20(3) (b).

Helwick filed a petition for writ of habeas corpus April 13, 1970, in the district court on the ground that the Army wrongfully denied his application for discharge as a I-O conscientious objector. Finding a basis in fact for the conclusions of the Board, the district court denied the petition, and Helwick appealed. *See* Helwick v. Laird, W.D.Tex.1970, 318 F.Supp. 878.

## II.

Federal courts have a narrow range within which to review the conscientious objector claims of active military personnel. As in the case of conscientious objector claims presented to local draft boards before induction, our scope of review is limited to ascertaining whether there is any basis in fact for the Army's finding that an individual has not presented a valid conscien-

3. At the same time Helwick volunteered to serve in the Selective Service civilian work program for conscientious objectors, if his local draft board should issue such an order.

tious objector claim. Pitcher v. Laird, 5 Cir. 1970, 421 F.2d 1272, 1278. *See also* Application of Tavlos, 5 Cir. 1970, 429 F.2d 859, 861; Bates v. Commander, First Coast Guard Dist., 1 Cir. 1969, 413 F.2d 475, 477.

Our first task in this case, therefore, is to determine whether there was any basis in fact for the Board's finding that Helwick does not truly hold views against participation in war in any form which are derived from religious training and belief.

At the outset of this proceeding there seems to have been some dispute as to whether this finding by the Board was a comment on Helwick's sincerity or the "religious" quality of his views. A review of the Boards written opinion, however, makes it clear that the Board meant to hold only that Helwick does not "sincerely" hold his professed views. For example, the Board writes,

> Sincerity is a threshold determination in each conscientious objector case, and as the Board determines this issue against Helwick, his request for discharge under AR 635–20 may not be favorably considered. \* \* \* The Board does not go into the issue whether or not Helwick's views are religious within the requirements of AR 635–20. \* \* \* This matter is mentioned only with respect to the issue of Helwick's sincerity and not with respect to the issue of religion *per se.*

The Board deliberately chose not to challenge the "religious" nature of Helwick's professed views. We have no doubt, however, that the Board seriously considered the issue, inasmuch as several of the endorsements in Helwick's application expressed doubt as to whether his views were sufficiently "religious." Apparently the Board resolved the issue in Helwick's favor. Moreover, in light of the Supreme Court's decisions in Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308, and United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and our decision in Pitcher v. Laird, 5 Cir. 1970, 421 F.2d 1272, that was a wise choice.

■ Therefore, in this case—indeed, as in all conscientious objector cases—the threshold question for review is the sincerity of the claimant in objecting, on religious grounds, to participation in war in any form. Sincerity is of course a subjective question. Witmer v. United States, 1955, 348 U.S. 375, 381–82, 75 S. Ct. 392, 99 L.Ed. 428, 434; United States v. Gernannt, 5 Cir. 1970, 427 F.2d 1157, 1159; United States v. Evans, 9 Cir. 1970, 425 F.2d 302, 305. Nevertheless, despite the narrow scope of review afforded the federal courts on the issue of sincerity, the Conscientious Objector Review Board is not vested with unbridled and unfettered discretion in evaluating the evidence submitted in support of conscientious objector claims. Packard v. Rollins, 8 Cir. 1970, 422 F.2d 525, 527. For example, the Board is not at liberty merely to disbelieve the claimant. There must be some facts in his application—hard, provable, reliable facts—that provide a basis for disbelieving the claimant. As this Court said in a Selective Service case,

> the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which *substantially* (emphasis added) blurs the picture painted by the registrant and thus casts doubt on his sincerity, Batterton v. United States, 8 Cir., 1958, 260 F. 2d 233.

Kessler v. United States, 5 Cir. 1969, 406 F.2d 151, 156. Accord: United States v. James, 4 Cir. 1969, 417 F.2d 826, 832; United States v. Hesse, 8 Cir. 1969, 417 F.2d 141, 143; United States v. Martin, 10 Cir. 1969, 416 F.2d 44, 49; Bates v. Commander, First Coast Guard Dist., 1 Cir. 1969, 413 F.2d 475, 478.

■■ From our review of the record before the Board, we conclude that there is no basis in fact for the Army's finding that Helwick does not truly hold his professed views. Certainly the statements he filed in support of his applica-

tion give no indication of any lack of sincerity. The Board and the district court attempt to read Helwick's statements concerning his temporary rejection of the institutionalized church as somehow casting doubt upon the sincerity of his claim to hold religious scruples against participation in war in any form. We cannot accept that inference. It is well established that one need not accept formal religion or be a member of an established church in order to qualify as a conscientious objector. *See* Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308; United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; United States ex rel. Hemes v. McNulty, 7 Cir. 1970, 432 F.2d 1182, 1186; United States v. French, 9 Cir. 1970, 429 F.2d 391; United States v. James, 4 Cir. 1969, 417 F.2d 826, 830. Moreover, we do not believe that Helwick's candid admission of youthful doubt about the value of the institutionalized church can reasonably be thought to indicate a lack of sincerity on his part about the beliefs he does profess to hold. *See* United States v. White, 5 Cir. 1970, 421 F.2d 487, 493. Indeed, neither Welsh's nor Seeger's doubts about the existence of a Supreme Being were even taken as reflecting on their sincerity; despite their unconventional views, there was never any question about the sincerity with which they held their convictions. *See* Welsh v. United States, 1970, 398 U.S. at 337, 90 S.Ct. 1795, 26 L.Ed.2d at 317. The district court seems to admit as much when, in another part of its memorandum opinion, it expresses "no doubt" that Helwick was sincere in disclosing his temporary rejection of the church and stating his guiding religious principles. 318 F.Supp. at 880.

■ Both the chaplain who interviewed Helwick and his unit commander found him to be sincere in his beliefs. Both recommended disapproval of his application, however, on the ground that the "depth and maturity" of his views precluded his classification as a I-O conscientious objector. This is a verbalism without any real meaning in this factual context. We are astonished that "depth and maturity" are prerequisites to conscientious objection to war. One does not have to be a St. Augustine or a Thomas Aquinas to qualify as a conscientious objector under AR 635-20. Caverly v. United States, 8 Cir. 1970, 429 F.2d 92, 94; United States v. Hesse, 8 Cir. 1969, 417 F.2d 141, 146. *Cf.* Talford v. Seaman, D.Md.1969, 306 F.Supp. 941, 945. We constantly classify as conscientious objectors many sincere persons singularly lacking in what military men or chaplains might describe as "depth and maturity". Indeed, as the First Circuit has well said,

> Whatever the stage of development of petitioner's insight, it is of no consequence to this inquiry. It matters only that he sincerely believes that his convictions are religious in origin.

Bates v. Commander, First Coast Guard Dist., 1 Cir. 1969, 413 F.2d 475, 480. Thus the fact that one lacks sufficient insight or knowledge to express his beliefs clearly does not detract from the strength and validity of his beliefs. Gann v. Wilson, N.D.Cal.1968, 289 F. Supp. 191, 194. Conscientious objection has no necessary relation to intellectual sophistication. Having expressly accepted Helwick's sincerity, the conclusions of the chaplain and his unit commander as to the sophistication of his views are irrelevant. *Cf.* United States ex rel. Sheldon v. O'Malley, D.C.Cir. 1969, 420 F.2d 1344, 1348-1349.

In support of its finding of insincerity, the Board points to the hearing officer's report that during his interview Helwick stated that his one goal was to "get out of the military no matter what the consequence." The Board interpreted this remark to mean that Helwick would do anything—including falsify his conscientious objector application—in order to be separated from the service. But the remark cuts two ways. Helwick may well have meant that one way or another he could not, consistent with his conscience, continue to serve in the Army; that is, if he were not dis-

charged as a conscientious objector, he would prefer to go to jail rather than continue to serve in the Army. Justice Black has characterized such an attitude as evidence of the depth and sincerity of a conscientious objector's convictions: "for them that voice [of conscience] was so loud and insistent that both men preferred to go to jail rather than serve in the Armed Forces." Welsh v. United States, 1970, 398 U.S. at 337, 90 S.Ct. 1795, 26 L.Ed.2d at 317. *See also* United States v. French, 9 Cir. 1970, 429 F.2d 391, 394. In light of Helwick's other statements, this latter interpretation seems the more logical inference. In any event, there is no evidence in the record to indicate that Helwick would lie to get out of the service. To allow the Army to deny Helwick's application on the basis of this one ambiguous remark would require us to give great weight to mere speculation; this we cannot do. Dickinson v. United States, 1953, 346 U.S. 389, 397, 74 S.Ct. 152, 98 L.Ed. 132, 138; Bates v. Commander, First Coast Guard Dist., 1 Cir. 1969, 413 F.2d 475, 480; United States ex rel. Healy v. Beatty, S.D.Ga.1969, 300 F.Supp. 834, 846.

Much of the remaining evidence in the record is irrelevant to the issue of Helwick's sincerity. Aside from the statement discussed above, the hearing officer did not comment on Helwick's sincerity. The psychiatrist merely found that Helwick did not suffer from any psychiatric disorders. Neither Helwick's battalion commander, the commander of the Medical Training Center, nor the post Commander questioned Helwick's sincerity.

We are constrained therefore to hold that there was no basis in fact for the Board's finding that Helwick does not truly hold views against participation in war in any form which are derived from religious training and belief. There is simply nothing in the record that *"substantially* (emphasis added) blurs the picture painted by [Helwick] and thus casts doubt on his sincerity." Kessler v. United States, 5 Cir. 1969, 406 F.2d 151,

156. Indeed, what evidence there is on the issue directly contravenes the Board's finding. In these circumstances the Board's first finding cannot stand.

### III.

The second issue for review is whether there was a basis in fact for the Board's finding that Helwick's views have not changed since the I-A-O classification and entry into the Army so as to entitle him to discharge under the provisions of AR 635-20(3)(b).

■ The district court found a basis in fact for the Board's second finding, relying heavily on a letter written by Helwick that was contained in his Selective Service file. It is undisputed that the Selective Service file was not part of the evidence upon which the Board based its decision. Therefore, Helwick argues, it was a material denial of due process for the district court to consider evidence not in his AR 635-20 application.

The point is well taken. In Application of Tavlos, 5 Cir. 1970, 429 F.2d 859, the Army attempted to prove its case in the district court by introducing into evidence a letter written by Tavlos to Senator J. William Fulbright. The letter was not part of Tavlos's AR 635-20 file. Nevertheless, the Army attempted to circumvent that fact by arguing that the letter was elsewhere in government channels and thus somehow "available" to the deciding Army agency. Judge Godbold, writing for the Court, summarily dismissed that argument and held that

whether there was basis in fact for denial must be determined by considering only the evidence before the deciding agency. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Keefer v. United States, 313 F.2d 773 (9th Cir. 1963); United States v. Alvies, 112 F.Supp. 618 (N.D.Cal.1953); United States v. Ruppell, 278 F.Supp. 287 (E.D.N.Y.1968); Packard v. Rollins, 307 F.Supp. 1388 (W.D.Mo.1969).

429 F.2d at 863. *Accord:* Silberberg v. Willis, 1 Cir. 1970, 420 F.2d 662, 665; Bates v. Commander, First Coast Guard Dist., 1 Cir. 1969, 413 F.2d 475, 477, n.2.

Ordinarily our review might end here. In this case, however, the district court apparently had a premonition of error, for it went on to hold that "even if the consideration of the Selective Service File, for the purpose indicated, was improper, the Court finds from the evidence introduced that there was and is a basis in fact for the conclusion that there has not been a substantial change in petitioner's professed religious beliefs subsequent to his entry in the military service." 318 F.Supp. at 883. We must therefore examine the evidence before the Board to determine whether the district court's latter holding was correct.

■ Before doing so, however, we must clarify one point. Both the Board and the district court loosely assert that there has been no substantial change in Helwick's religious beliefs subsequent to his I-A-O classification and entry into the Army. The trouble with this statement is that

> there is nothing in the Statute, the Regulations or the decisional law which requires a substantial change in religious beliefs subsequent to classification as I-A-O in order to present a valid claim for discharge on conscientious objector grounds.

United States ex rel. Healy v. Beatty, 5 Cir. 1970, 424 F.2d 299, 302, aff'g S.D. Ga.1969, 300 F.Supp. 843.

Under AR 635–20 there is no requirement that the religious belief upon which objection is based must manifest itself only subsequent to entry into the service. Indeed, the claimant may properly hold the same or similar religious beliefs both before and after his entry into the service. Rather, the requirement of AR 635–20(3) (b) is that the objection itself—the objection to participation in war in any form—must become fixed only after entry into the Army. Although the Board has inartfully phrased it, we assume that it meant to find this latter fact—that Helwick's objection to participation in war in any form existed at the time he was granted a I-A-O classification and did not thereafter change.[4]

■ We conclude, however, that there was no basis in fact for the Board's finding that Helwick's objection existed prior to his entry into the Army and that his views did not thereafter change. In the statements attached to his application for discharge, Helwick presented a prima facie claim that his views had indeed changed. At the time he applied to his local draft board for a I-A-O classification, he was—it was true—motivated by the same religious objections to killing that compelled him later to seek a discharge. When he first entered the Army as a I-A-O conscientious objector, however, he believed that it was in accordance with his religious beliefs to participate in the medical branch of the Army; there he could humanely administer to the needs of all injured participants of war. After entering the Army and going through basic training, his views changed. He came to realize that the purpose of the medical corps—like that of other noncombatant elements—is to support the partisan efforts of the combat forces. For that reason Helwick now finds participation in the Army in any capacity contrary to his religious beliefs. Such views, if sincerely held, would clearly entitle him to discharge as a I-O conscientious objector under AR 635–20(3) (b).

4. Indeed, if this is not what the Board meant, but rather it intended to deny Helwick's application for discharge on the ground that his religious beliefs themselves had not changed subsequent to his entry into the Army, then the Board has applied a patently erroneous legal standard, and Helwick's prayer for habeas corpus relief must be granted without further ado. United States ex rel. Healy v. Beatty, 5 Cir. 1970, 424 F.2d 299. *Cf.* United States v. Callison, 9 Cir. 1970, 433 F.2d 1024; Pitcher v. Laird, 5 Cir. 1970, 421 F.2d 1272.

We have already determined that there is no evidence in the record to support a finding that Helwick does not truly hold religious scruples against participation in war in any form. The question then is whether there is any evidence to cast doubt upon his claim that his objection became fixed only after entry into the Army. The district court purported to find such evidence in the admitted fact that Helwick expressed similar religious views when he applied for a I-A-O classification. As noted above, however, there is no requirement in the law that one's religious beliefs manifest themselves only after entry into the Army. United States ex rel. Healy v. Beatty, 5 Cir. 1970, 424 F.2d 299, 302. Both the district court and the Board thought it unlikely that Helwick's views would change after having been exposed to military life for only two and a half months. Actually Helwick was on active duty for three and a half months before filing his application for discharge, but that is not important. It defies logic and experience to assert that an Army recruit's views toward the military could not change during the time he goes through basic training. Indeed, the very purpose of basic training is to break down the recruit's civilian orientation and orient him in the ways of military life. Finally, the only comment in Helwick's AR 635–20 file on this issue is that of the commander of the Medical Training Center, who, after reviewing the file and without interviewing Helwick, stated that "[t]here is no indication that there has been a substantial change in his professed religious beliefs subsequent to his I-A-O classification." As we have indicated, the absence of any change in the religious beliefs of an applicant is immaterial to the issue. Moreover, the commander does not cite any evidence in support of his conclusion that could have any bearing on the issue whether Helwick's objection to participation in war in any form appeared only after his entry into the Army. *Cf.* Talford v. Seaman, D.Md.1969, 306 F.Supp. 941, 945.

Summed up then, we can find no evidence in the record to cast doubt upon Helwick's claim that his views toward participation in the Army have changed since entering the service. Therefore, we are obliged to hold that there is no basis in fact for the Board's second finding.

Since we have found no basis in fact for the Army's denial of Helwick's application for discharge as a I-O conscientious objector, we reverse the judgment of the district court and remand the case to it with directions to grant Helwick's prayer for habeas corpus relief.