**Wayne M. LOGEMANN, B661015**

v.

**Melvin LAIRD, Secretary of Defense, et al.**

Civ. A. No. 72–73.

United States District Court, E. D. Pennsylvania.

April 20, 1972.

Alan M. Lerner, Philadelphia, Pa., for petitioner.

Barry Kerchner, Asst. U. S. Atty., Philadelphia, Pa., for respondents.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Petitioner seeks a writ of habeas corpus ordering his discharge from the Navy as a conscientious objector.

Wayne M. Logemann, the petitioner, entered active duty in the Navy on February 2, 1970. After being trained as a hospital corpsman, he was stationed at the United States Naval Hospital, Philadelphia, Pa. in September 1970. On February 2, 1971, Logemann refused to report for work at the hospital on the ground that his conscience would no longer permit him to participate in the military. He then spent some time in the brig awaiting Court Martial for failure to report to work. He was released from the brig, however, and his Court Martial was continued when he agreed to cooperate with the Navy for two months while a conscientious objector (C.O.) discharge application was processed. On March 30, 1971, Logemann filed his first application for C.O. discharge. On July 12, 1971, Logemann's Summary Court Martial was completed and he was sentenced to a forfeiture in pay of $95 and reduction in rank to E–1. On August 26, 1971, after interviews with a Navy psychiatrist, chaplain, and field grade officer, Logemann's first C.O. discharge application was disapproved as a "manipulative attempt to obtain a discharge, not motivated by a deeply held moral, ethical, or religious objection to all war."

On November 10, 1971, Logemann filed a reapplication for a C.O. discharge. This second application was clearly more detailed than the first and rebutted the impression apparently held by the Navy that Logemann had previously sought a psychiatric discharge. On November 11, 1971, Logemann was sent to another Navy psychiatrist, Dr. D. F. Holt, who concluded that there was "no reason to question the sincerity of his application." Nevertheless, the Navy had Logemann interviewed again on November 18, 1971 by Navy Chaplain Donald K. Muchow—the very same chaplain who interviewed him in connection with his original application. Chaplain Muchow again expressed the feeling that Logemann was manipulative and questioned his sincerity. Thereafter, on December 8, 1971, Logemann's Commanding Officer, Captain L. T. Brown, relying on Navy regulation BUPERSNOTE 1900, § 15(f) of October 8, 1971, returned the reapplication without action on the ground that it was essentially the same as a previous one disapproved by the Chief of Naval Personnel.

Logemann then informed his superiors that he would refuse to work at the Naval Hospital after the first of the year. When he refused a direct order to report to his job on January 3, 1972, Naval authorities had him arrested and commenced Court Martial proceedings against him. On January 11, 1972, Logemann filed the instant petition for a writ of habeas corpus. Meanwhile, on March 20, 1972, Logemann was found guilty in a Special Court Martial of violating a lawful order to go to work and was sentenced to a bad conduct discharge, confinement at hard labor for four months, and forfeiture of $190 per month for four months.

Initially, Logemann's petition alleges that the Navy failed to follow its own regulations in considering his reapplica-

tion Paragraph 15(f) of BUPERSNOTE 1900 (8 October 1971) provides:

"Commanding officers are authorized to return to an applicant, without action, any second or subsequent application that is based upon essentially the same grounds, or supported by essentially the same evidence, as a previous application disapproved by the Chief of Naval Personnel. This authority does not preclude forwarding such an application if the commanding officer considers that review of the application may be warranted."

Logemann's reapplication, however, was substantially more elaborate and detailed than his original application. In fact, Logemann's Commanding Officer, Captain Brown, must have had some doubts about the similarity of the two applications because he did not return the reapplication to Logemann immediately. Instead, he sent Logemann to a Navy psychiatrist, Dr. Holt, who found petitioner sincere, and once again to Chaplain Muchow who conceded that differences existed between the first and second applications. Captain Brown then decided to return the reapplication to Logemann without action, apparently on the strength of Chaplain Muchow's conclusion that Logemann was insincere and that the reapplication was basically the same as the original one.

■ Captain Brown's action appears to fall somewhere between fully processing the reapplication and returning the reapplication completely without action. Since Captain Brown had sufficient doubt about the reapplication to merit having Logemann interviewed again by a Navy psychiatrist and a Navy chaplain, the applicable Navy regulation, fundamental fairness, and common sense dictate that the reapplication should have been fully processed. A complete processing would have entitled Logemann to a hearing before an investigating officer of the grade of lieutenant commander or above qualified to conduct the interview. BUPERSNOTE 1900, paragraph 10 (8 October 1971). He would also be entitled to be represented by counsel at such hearing, to present a case in his own behalf, and to rebut any adverse material in the record. By giving Logemann less than his full procedural rights, Captain Brown did not properly follow the Navy regulations.

■ In addition to the Navy's conduct in processing Logemann's reapplication, the petition also challenges the denial of his original application. It alleges that there was no basis in fact for the denial by the Bureau of Naval Personnel of his original application for C.O. discharge. This, of course, is the only ground on which this Court could set aside the Navy's disposition of petitioner's original application, since the Navy accorded him all his procedural rights with regard to that application. *See, e. g.* United States ex rel. Armstrong v. Wheeler, 321 F.Supp. 471, 478 (E.D.Pa. 1970). In this respect this Court is sensitive to the fact that it must not act as a superboard and weigh the evidence or judge its substantiality. Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Nevertheless, the Navy " . . . is not vested with unbridled and unfettered discretion in evaluating the evidence submitted in support of conscientious objector claims. [citation omitted] . . .. [The Navy] is not at liberty merely to disbelieve the claimant. There must be some facts in his application—hard, provable, reliable facts—that provide a basis for disbelieving the claimant." Helwick v. Laird, 438 F.2d 959, 963 (5 Cir. 1971). It is within this framework that the file must be reviewed to determine whether any basis in fact existed for the Bureau of Navy Personnel's conclusion that Logemann did not sincerely hold views against participation in war in any form.

The August 26, 1971, letter from the Chief of Naval Personnel to Logemann disapproving his application and labeling it a "manipulative attempt to obtain a discharge" relied upon the following factors: (a) the fact that Logemann contacted the Draft Information Center in December of 1970 because he was "dis-

gruntled with the Navy and wanted a discharge."; (b) the belief that Logemann sought a C.O. discharge only after an attempt to obtain a psychological discharge failed; and (c) the conclusion of Chaplain Muchow that Logemann's application was insincere and lacked depth of belief.

■ Merely because Logemann admittedly wanted a discharge and contacted the Draft Information Center does not demonstrate insincerity. The difficulties of accomplishing an application for a C.O. discharge are considerable and the decision to seek expert advice is understandable. United States ex rel. Greenwood v. Resor, 439 F.2d 1249, 1252 (4 Cir. 1971). In addition, Logemann's admitted desire for a discharge does not indicate insincerity since there is no evidence in the record to indicate that he would engage in falsehood to get out of the service. Helwick v. Laird, *supra,* 438 F.2d at 964–965.

The assumption that Logemann sought a C.O. discharge only after an attempt to obtain a psychological discharge failed was simply erroneous as was admittedly demonstrated in his reapplication.

The only proper basis possible for the Bureau of Naval Personnel's conclusion that Logemann was insincere, therefore, was the report of Chaplain Muchow. Consequently, the reasons stated in that report must be considered in conjunction with the entire record to determine whether they form a basis for a conclusion of insincerity by substantially blurring the picture painted by Logemann in his application. Kessler v. United States, 406 F.2d 151, 156 (5 Cir. 1969).

Chaplain Muchow's report should not be considered in a vacuum but along with the comments of other people in a position to gauge Logemann's attitude. Pastor Vriesen of his parents' church and Dr. John Mock, the private psychiatrist Logemann consulted, both submitted letters in support of his sincerity. While one may conclude that these letters do not come from totally unbiased sources, they cannot be completely ignored. In addition, it is significant that Lieutenant Commander Arthur Speck, for whom Logemann worked at the Naval Hospital, admitted respecting Logemann's sincerity while disagreeing with his beliefs. Furthermore, Dr. M. E. Block, the Navy psychiatrist who interviewed Logemann in connection with his original C.O. application, concluded that he appeared "sincere about his conscientious objector feelings." [1] Notwithstanding these favorable appraisals of Logemann's sincerity, Chaplain Muchow reached a contrary conclusion for three reasons.

Firstly, the chaplain noted that Logemann admittedly joined the Navy with reservations "concerning his loyalty to the authority of the U.S. Navy over his life." The chaplain apparently concluded that since Logemann took the naval service oath while harboring reservations about his ability to uphold it, he should not be believed when applying for C.O. status while in service. The precise nature of Logemann's reservations were more explicitly set forth in his reapplication and, correspondingly, Chaplain Muchow's objections thereto were more clearly detailed in his second report.

■■ In his reapplication Logemann explained that he had participated in several anti-war organizations in the Fall of 1969 but nevertheless enlisted in the Navy in February, 1970, when the draft was pressing him. Chaplain Muchow questioned "the timing of these

---

1. Dr. Block also was of the impression that Logemann had an "immature personality" and was of the "passive-aggressive type." The Navy had Logemann interviewed by another Navy psychiatrist, Dr. D. F. Holt, in connection with the reapplication for discharge. Interestingly enough, Dr. Holt not only reaffirmed the opinion that there was no reason to question the sincerity of the application but added that he felt there was reason "to question the objectivity of the report by the previous Navy psychiatrist."

two somewhat contradictory acts." It is clear, however, that the timing of a C.O. application is simply not by itself sufficient to provide a basis in fact for rejection of a prima facie showing of conscientious objection. Rothfuss v. Resor, 443 F.2d 554 (5 Cir. 1971); United States ex rel. Greenwood v. Resor, 439 F.2d 1249 (4 Cir. 1971); Bohnert v. Falkner, 438 F.2d 747 (6 Cir. 1971); Champ v. Seamans, 330 F.Supp. 1127 (M.D.Ala.1971); Nachand v. Seaman, 328 F.Supp. 753 (D.Md.1971); Goodwin v. Laird, 317 F.Supp. 863 (N.D.Calif. 1970); United States ex rel. Armstrong v. Wheeler, *supra*, 321 F.Supp. at 480. In several cases even the suspicious failure to apply for discharge until deployment in a combat zone was imminent did not provide a sufficient basis in fact to reject the application. Rothfuss v. Resor, *supra;* Champ v. Seamans, *supra;* Nachand v. Seaman, *supra.* Logemann, therefore, safely nestled at the Philadelphia Naval Hospital, should not be labeled. insincere merely because he did not mention his conscientious objection until after he enlisted.[2]

Chaplain Muchow's second reason for questioning Logemann's sincerity arose from an answer to a hypothetical question posed to Logemann by the chaplain at their interview. Logemann stated that had he been a Jew in Nazi Germany and unable to stop the rise of Hitler and spread of Naziism by reason and persuasion he would have fled to another country. The chaplain questioned how this "behavior of escapism" would square with conscientious objection allegedly resting on his faith in man. The chaplain reasoned that although Logemann defined faith in man as belief in a person's innate potential to be productive and helpful toward other human beings, a decision to flee Nazi Germany would be of no help to his fellow Jews still remaining. Logemann replies that a decision to flee for one's life rather than stand and fight against overwhelming odds is not only wise but entirely consistent with both basic human nature and conscientious objection. Suffice it to say that Chaplain Muchow's reasoning is highly debatable at best and is clearly the type of speculation upon which doubt as to sincerity cannot rest. *See, e. g.,* United States ex rel. Armstrong v. Wheeler *supra*, 321 F.Supp. at 480.

Chaplain Muchow's final reason for doubting Logemann's sincerity, his feeling that Logemann was "manipulative toward acquiring his own ends," was not clearly expressed until his report in response to the reapplication for C.O. discharge. In support of this "feeling" the chaplain pointed out that Logemann fasted for eight days while awaiting court martial to induce a decision from command. Apparently the Navy would not act on his original request for conscientious objector discharge until the court martial was resolved. While some might even argue that the eight-day fast is indicative of sincerity, to conclude that it demonstrates insincerity is again nothing more than mere speculation.

---

2. In fact, C.O. discharges have been granted where conscientious objection beliefs manifested themselves before enlistment but did not crystallize until after enlistment. United States ex rel. Barr v. Resor, 143 U.S.App.D.C. 292, 443 F.2d 707 (1971); Rothfuss v. Resor, *supra*; Helwick v. Laird, *supra*; Goodwin v. Laird, *supra. Helwick* perhaps represents the factual situation closest to the instant case. When Helwick was inducted into the Army, he agreed to participate as a noncombatant in the medical corps in the belief that its main purpose was the loving concern to heal the injured participants of war. After receiving training in the medical branch, however, he came to believe that any participation in the military violated his principles. In holding that there was no basis in fact for the Army's denial of Helwick's application for discharge as a conscientious objector, the Court concluded that: (1) the depth and maturity of an applicant's views are irrelevant, 438 F.2d at 964; (2) the fact that the applicant stated that his one goal was to get out of the military did not demonstrate insincerity, 438 F.2d at 964–965; and (3) the applicant's beliefs may have manifested themselves before enlistment as long as they did not become fixed until after enlistment, 438 F.2d at 966.

The chaplain also alleged that Logemann's manipulative nature was demonstrated by his attempt to arrange for a different chaplain to interview him for his second discharge request. At the hearing held on the instant petition Logemann denied this assertion and maintained that it was Chaplain Muchow who first mentioned the possibility of arranging for another chaplain to conduct the second interview. Who brought up the subject first is of little importance. It seems only natural for an applicant to prefer a different chaplain at a second interview than the one who concluded that he was insincere on his first application. Such a preference offers no basis for the conclusion that Logemann was being manipulative in his request for a discharge.

It is only with great reluctance that I interfere with a decision that is ordinarily within the exclusive province of the military. For all the reasons set forth above, however, I conclude that the Bureau of Navy Personnel had no basis in fact for finding that Logemann was insincere in his conscientious objection beliefs. Consequently, Logemann's petition for a writ of habeas corpus shall be granted.