**Richard D. SMITH, Petitioner,**

v.

**Melvin LAIRD, The Secretary of Defense, et al., Respondents.**

**Civ. No. 9657.**

United States District Court,
D. New Mexico.

Jan. 8, 1973.

W. F. Kitts, Albuquerque, N. M., William A. Norris, Cummington, Mass., for petitioner.

Victor R. Ortega, U. S. Atty., Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M., for respondent

## MEMORANDUM OPINION AND ORDER

MECHEM, District Judge.

Petitioner, Richard D. Smith, a Captain in the United States Air Force, brings this habeas corpus proceeding requesting that the Court order his discharge from military service as a conscientious objector.

Petitioner was appointed as a medical services officer on June 5, 1967, and entered active duty on September 5, 1967. The Air Force sponsored his medical education and his pediatrics internship under the Air Force Institute of Technology (AFIT) program. He completed this schooling, at considerable expense to the Air Force,[1] in May of 1971.

In April of 1971, Petitioner was notified that he would not be eligible for military or civilian sponsored residency training until he had served 12 months on active duty as a physician at a military facility.

On October 1, 1971 he took his oath as an officer in the medical corps without reservation.[2] On the same day he notified AFIT of his intention of applying for conscientious objector classification. Shortly after, in accordance with Air Force Regulations, Petitioner submitted an application for classification and discharge as a conscientious objector.

During the next two months eight letters of reference from close friends and former teachers were received by the Air Force attesting to Petitioner's sincerity and conviction in filing for conscientious objector classification.

Pursuant to Air Force Regulation 35–24, Petitioner was interviewed by an Air Force psychiatrist, a Chaplain and an investigating officer. The investigating officer in a report filed March 6, 1972, recommended that Petitioner not be classified as a I–O conscientious objector because he questioned the Petitioner's sincerity.

---

1. Petitioner estimated the expense to be approximately $61,000 in his interview with Lt. Col. Gordon. Page 51 of the Record.

2. This was done on advice of counsel, however. Page 73 of the Record.

Following the investigating officer's report, several reviewing agencies recommended disapproval of Petitioner's application and on August 22, 1972, the Secretary of the Air Force denied his application for discharge on the basis that there is a reasonable question as to the sincerity of Petitioner's convictions.

■ In order to qualify for discharge from the Armed Forces as a conscientious objector an applicant must show each of the following:

1. That he is opposed to war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

2. That his objection is grounded in religious principles as construed in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

3. That his beliefs are sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

The Secretary's decision to deny the Petitioner's application was based on the ground that Petitioner lacks sincerity.

■ The only question here for determination is whether this conclusion of the Air Force is supported in the record by a "basis in fact". Helwick v. Laird, 438 F.2d 959 (5th Cir. 1971).

■ The Government concedes that Petitioner has presented a prima facie case for conscientious objector classification. This being established the Air Force has the burden of showing something substantial in the record to support a denial. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States v. Corliss, 280 F.2d 808 (2nd Cir.) cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960).

■ The scope of review of the record in a case such as this is very narrow. The test is not whether the decision of the Air Force is correct or incorrect or whether a reviewing district judge would reach the same conclusion upon an evaluation of the same evidence. The sole question is whether there exists in the record any basis in fact for the administrative denial of Petitioner's application. Helwick v. Laird, supra.

■ The Air Force has questioned Petitioner's sincerity. Sincerity, being subjective, is difficult of determination but this difficulty will not justify a finding of lack of sincerity based on speculation. "There must be some . . . hard, provable, reliable facts . . . that provide a basis for disbelieving the claimant." Helwick, supra.

"To be precise about it, the disbelief . . . of . . . officials will not justify the rejection of a claim of conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which substantially blurs the picture painted by the registrant and thus casts doubt on his sincerity." Batterton v. United States, 260 F.2d 233 (8th Cir. 1958).[3]

■ The best judges of Petitioner's sincerity are those who actually interviewed him and of these the Chaplain is in the best position to evaluate the sincerity of the applicant's beliefs. United States ex rel. Greenwood v. Resor, 439 F.2d 1249 (4th Cir. 1971).

The Chaplain summarized his interview with Petitioner as follows:

"In my opinion, Captain Smith is sincerely concerned about his role in society and honestly feels that he could not serve in any military capacity. While I feel that the reasons outlined above motivating him to become a conscientious objector are impressive and honestly portrayed, I also feel that his overall outlook lacks refinement in presentation and in content. In some measure, Captain Smith's demanding schedule can account for this shortcoming. I believe that there is

3. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969).

no duplicity in Captain Smith's intent. On the basis of one interview, however, I cannot make any statements regarding the depth of Captain Smith's convictions. I am favorably impressed, however, by his willingness to serve in public medicine or repay his educational costs. Could such an arrangement be made, I would have no reason to doubt Captain Smith's sincerity or depth of conviction." [4]

The psychiatrist who interviewed Petitioner, in addition to finding him completely free of any psychiatric disease, stated, "I feel the patient's beliefs are sincere and well founded, and I have no reason to believe it could be questioned from a psychiatric standpoint." [5]

Only the hearing officer, Lt. Col. Gordon, whose responsibility it is to make the recommendation, clearly stated that he doubted the Petitioner's sincerity. Lt. Col. Gordon conducted a three-hour hearing with Petitioner which is summarized in his report.[6] He recognized from Captain Smith's responses during the hearing that Petitioner had spent a great deal of time developing his beliefs and that he appeared to be a complete pacifist. In discussing the three basic criteria set forth above Lt. Col. Gordon acknowledged that Petitioner is opposed to war in any form and that this opposition is based on his concept of the nonviolation of the "human spirit". He recommended a denial of Petitioner's request for classfication as a I–O conscientious objector, however, because as he stated: "Obvious inconsistencies in his case cause me to strongly question the sincerity of his beliefs."

The sole question before this Court therefore, is whether any one of the "obvious inconsistencies" found by the hearing officer provide a "basis in fact" for the denial.

The first inconsistency and the one which seems to have concerned the hearing officer the most is the fact that Petitioner wrote a letter to AFIT indicating he intended to apply for conscientious objector status on the same day that he took his oath of office for commissioning into the medical corps.

"It is difficult for me to understand how an individual can take an oath, freely and without mental reservation, to defend the Constitution of the United States against all enemies, the same day he seeks status as a conscientious objector." (R. 53).

Petitioner explained this apparent inconsistency in his rebuttal letter. (R. 66)

"As I stated in the 0–3 hearing, during the first several weeks to as late as two months following my realization as a Conscientious Objector, I was very much torn between my need to live in accordance with those beliefs which formed the basis of my conscientious objection and my feelings of obligation to the Air Force for having sponsored my education through medical school. For a time I had resolved this dilemma by deciding that while I had to apply for status as a conscientious objector to satisfy the dictates of my conscience, I would not apply for discharge, that is, I–0 status, but rather would apply for noncombatant status, that is, I–A–0 status. I discussed this course of action with several friends at that time and am including statements of two of these people . . . . Thus it was no accident that my Oath of Office and letter stating my intention to apply for conscientious objection status were completed and mailed on the same day, for in following this course I was stating that, although I recognized my obligation to the Air Force and wished to fulfill that obligation, I was nevertheless a conscientious objector and had to stand up for my beliefs."

A letter from Richard E. Bir (R. 74) and an affidavit from Petitioner's attor-

4. Page 48 of the Record

5. Page 46 of the Record

6. Pages 49–55 of the Record

ney to the effect that it was on his advice that Petitioner completed the Oath of Office form (R. 73) verify Petitioner's explanation of his state of mind at the time he made the "inconsistent" statements.

The second "inconsistency" is the fact that Petitioner alleged it was the notification in the fall of 1971 that he would be expected to serve in the Air Force as a general medical officer or a flight medical officer that caused him great mental anguish and which eventually led him to file for conscientious objector status. The hearing officer points out that Petitioner was or should have been made aware of this possible assignment in April of 1971. From this inconsistency the hearing officer concluded in his report that there must have been other factors which caused Petitioner to apply for discharge.

■ In his rebuttal letter, Petitioner gives various reasons why the letter in April did not affect him as it probably should have but the important point is that his claimed "crystallization" of conscientious objection did not form until the fall of 1971. It is at this time that the sincerity of Petitioner's beliefs must be viewed.

". . . the motivating force behind my application for Conscientious Objector status was a direct result of my belief in the sacredness of the Human Spirit, for as I stated . . . I had to a great degree dealt with my beliefs and their consequences by denying their meaning, rationalizing that as a pediatrician, who works only with children, I would not really be fulfilling a military role or contributing to the violation of the Human Spirit and would thus be able to serve out my obligation to the Air Force. Upon hearing that I am scheduled to be utilized as a Flight Surgeon or General Medical Officer, I could no longer deny my beliefs and their meaning to my life for, I fully realized that by fulfilling the role of either of these members of the Medical Corps I would be clearly be performing a military function for the whole purpose of my work would be to help maintain the health and morale of the officers and enlisted members of the Air Force in order to insure their maximum fighting preparedness and efficiency, thus I would be playing a definite part in supporting the violation of the Human Spirit." (Page 65 of the Record).

■ It is not the motivation of Petitioner that is at issue here, rather it is the sincerity of Petitioner's expressed beliefs about religion and war. As is pointed out in United States ex rel. Greenwood v. Resor, 439 F.2d 1249, 1252 (4th Cir. 1971), "neither impending military duty . . . nor the voluntary assumption of military obligation, . . . nor the advanced stage of an applicant's training, . . . are sufficient grounds for rejecting (the) claim."

In Goldstein v. Coleman, 339 F.Supp. 357 (D.C.1972) the views of the Petitioner, also a medical doctor, did not crystallize until he had received orders for Viet Nam, yet that Court found this not to be relevant citing Bates v. Commander, 413 F.2d 475, 480 (1st Cir. 1960): "Whatever the state of development of petitioner's insight, it is of no consequence to this inquiry. It matters only that he sincerely believes . . .".

What appears to be the final point of inconsistency in the hearing officer's report is worded as follows:

"Captain Smith did present a convincing case at his hearing and I believe that he in fact does strongly believe in the nonviolation of the 'human spirit'. I further believe that he is a dedicated medical doctor and his utmost goal, at this time, is to become a fully qualified pediatrician as soon as possible. In my estimation, it is the pursuit of this goal which has provided the primary motivation for him to seek release from the Air Force as a conscientious objector. Obvious in-

consistencies in his case cause me to strongly question the sincerity of his beliefs."

██ This summation provides no basis in fact for rejection and in actuality indicates that it is not the sincerity of the applicant as to his religious opposition to war in any form that caused the hearing officer to recommend a denial of Petitioner's application. Rather it appears from a reading of the report that the hearing officer was concerned with the obvious unfairness of allowing Petitioner to use the Armed Services to obtain an expensive education and then escape without repayment because he has not been mature enough to face his commitments in life until forced by what should have been a foreseeable obligation.

Indeed the Chaplain's closing remarks to the effect that he would have no reason to doubt the Petitioner's sincerity or depth of conviction if an arrangement could be worked out for Petitioner to repay his educational costs exhibit the same concern.

██ There is no basis in fact in the record to substantiate a denial of Petitioner's request for discharge on the basis of conscientious objector status.[7] However, due to the particular circumstances of this case relief will be conditioned on the Petitioner serving in the civilian work program administered by the Selective Service System for a period of time equal to that of his remaining active duty obligation.[8]

Now Therefore, it is ordered:

1. That the petition for writ of habeas corpus be and the same is hereby granted conditioned upon Petitioner serving in the civilian work program administered by the Selective Service System for a period of time equal to that of his remaining active duty obligation;

2. That the effective date of the writ be stayed for one month from the date of filing of this Opinion and Order to allow time for Petitioner's discharge under the appropriate regulations. Should respondents choose not to do so the writ will issue forthwith.

---

7. See Tressan v. Laird, 9th Cir., 454 F.2d 761, where the Court held that the fact that a Navy medical officer had accepted a commission and the benefits of military residency, that he had taken weaponry training, that he had treated sick and injured military personnel without objection, that he was well educated and that he had received orders to report to Viet Nam provided no basis in fact for determination that the officer was insincere in his conscientious objector's claim in light of the officer's full and explicit explanation of the reasons for the late crystallization of his beliefs and his prolonged effort to reconcile his increasing pangs of conscience with his concepts of the demands of military duty.

8. See Osborne v. Seaman, 318 F.Supp. 41, 44 (D.C.1970) and the cases cited therein.