**PFC Carl F. ROTHFUSS, Petitioner-Appellant,**

v.

**Stanley RESOR, Secretary of the Army, and Colonel Paul Chmar, Fort Bliss, Texas, Respondents-Appellees.**

**PFC Lawrence P. O'BRIEN, Petitioner-Appellant,**

v.

**Stanley RESOR, Secretary of the Army, and Colonel Paul Chmar, Fort Bliss, Texas, Respondents-Appellees.**

**Nos. 30731, 30850.**

United States Court of Appeals, Fifth Circuit.

June 15, 1971.

Wayne Windle, Jr., El Paso, Tex., for petitioner-appellant Rothfuss.

Ruth Kern, El Paso, Tex., for petitioner-appellant O'Brien.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Victor K. Sizemore, Asst. U. S. Atty., El Paso, Tex., for respondents-appellees.

Before COLEMAN, SIMPSON and RONEY, Circuit Judges.

SIMPSON, Circuit Judge:

These two cases, consolidated for oral argument, come to us on appeal from denials of habeas corpus relief by the district court for the Western District of Texas. We find it convenient to our purposes to dispose of the two appeals by a single opinion.

Both appellants are service men on active duty with the United States Army. Each sought discharge from the Army on grounds of conscientious objection to both combatant and noncombatant military service. The denials of application for discharge by the Army were upheld by the district court's denial of habeas relief. We remand the cases for further proceedings before the district court.

*Rothfuss v. Resor, No. 30,731*

Carl F. Rothfuss was inducted into the Army on June 20, 1969. He was a graduate of Michigan State University and had taken some post-graduate work at that institution prior to his induction. On June 24, 1970, Rothfuss filed an application for discharge as a Class I-O conscientious objector [1] pursuant to Army Regulation 635–20.[2] Although Rothfuss acknowledged his upbringing in a Roman Catholic home, he based his claim on broader Christian principles, stating that his religious beliefs were founded on "Non-sectarian Christianity —faith in and adherence to the fundamental pacifist teachings of Jesus of Nazareth as revealed and recorded in the Gospels, without active membership in any denomination". Rothfuss submitted a comprehensive application, describing the nature of his claimed belief, the sources from which he had received his training and belief, and the actions and behavior in his life which demonstrated the depth and consistency of his religious faith. Rothfuss described his Catholic background, and his recent acquaintance with the teachings of one Gordon Zahn, whom he described as a leading contemporary Catholic pacifist. Rothfuss explained that his reading of the teachings of Zahn, coupled with his military training in the art of killing human beings, caused a crystallization of his objection to war in all forms after his induction into the Army. Rothfuss' father, two previous college instructors at Michigan State University, and a fellow graduate student who had known Rothfuss at Michigan State all submitted letters attesting to the sincerity of Rothfuss' beliefs.

In accordance with Army regulations, Rothfuss was interviewed by an Army Chaplain. Chaplain Louis J. Karry reported his conclusions:

"This is to certify that I, Chaplain (LTC) Louis J. Karry, have counselled with PFC Carl F. Rothfuss, SSAN 054–38–8732, in reference to his claim to be a conscientious objector. After much discussion it was learned that the claimant's views are not of a political, sociological, or philosophical nature, nor the result of previous religious training. I believe that these views and convictions are

---

1. 32 C.F.R. § 1622.14 provides

In Class I-O shall be placed every registrant who would have been classified in Class I–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces.

2. Army Regulation 635–20 governs the procedures and standards for the consideration of conscientious objector claims of active duty military personnel, when such objection occurs subsequent to entry into the active military service. Its ready availability and its five page length seem sufficient reason to forego reprinting it here.

of a religious nature and prompted by the man's conscience, and personal conviction. I have found him most sincere in his convictions."

With this evidence before an Army Conscientious Objection Review Board, the appellant was interviewed by the Board. His immediate commanding officer, Captain V. Pittman, stated his conclusions after the interview:

"I doubt that PFC Rothfuss' beliefs are as deep and concrete as he states. They appear to be founded on a personal moral code based on apprehension of his pending assignment to Vietnam."

Colonel Paul Chmar, another reviewing officer, stated:

"After interviewing PFC Rothfuss, the undersigned is of the opinion that his beliefs of not being able to serve in the armed forces are based more on aversion to the war in Vietnam rather than a deep seated, life long religious concept. During the interview it was brought out that, had this individual's military training led to an assignment in Germany or Western Europe he probably would not have developed the feelings of his inability to serve in the armed forces. The sincerity of the application is further questioned in that PFC Rothfuss indicated his intent to apply for I-O status only after notification of assignment to Vietnam. Concurrently three of his classmates submitted similar applications."

Captain John J. Doggett, III, the third officer to review the applicant's claim for discharge, concluded:

"It is interesting to note that PFC Rothfuss' position and beliefs have completely changed in a relatively short time. PFC Rothfuss did not make an application for conscientious objector status until immediately before he was to be sent to Vietnam. He made no application nor made his alleged beliefs known until after he had completed basic combat training and advanced training in Vietnamese language. Also PFC Rothfuss appears to be mainly concerned with the Vietnam war and he pays lip service to an objection against all wars so as to come within the purview of Army regulations. PFC Rothfuss' explanation of his religious beliefs reveals that he merely re-examined his position and finds that now serving in the military is a violation of his conscious (sic) and belief in the teachings of Christ. This belief does not appear to be a primary controlling force in this man's life and has not been developed through any religious training or self contemplation comparable in rigor and dedication to those processes by which traditional religious convictions are formulated."

The application was then forwarded by the Review Board to the Adjutant General of the Army with an unfavorable recommendation based upon a statement that applicant's beliefs were not religious in nature and were not sincerely held by the applicant. The Adjutant General, on August 31, 1970, denied Rothfuss' application with the notation that "applicant's views are not truly held". We interpret this to mean that the discharge was not denied on the basis of the conclusions of the interviewing officers that Rothfuss' beliefs were not based on religious training and belief, but rather that the denial was based solely on the interviewing officers' bare conclusions with regard to the applicant's sincerity.[3]

Petition for habeas corpus was filed in the district court. After a non-evidentiary hearing the district judge denied the petition for writ of habeas cor-

---

3. We mention this only to point out that all parties appear to agree that Rothfuss' claimed objection is sufficient to come within the ambit of "religious training and belief" as those words were interpreted by the Supreme Court in

Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. At the hearing before the district court counsel for the Army argued that the Army's denial could be upheld on the finding of insincerity alone.

pus. The denial was supported by the judge's finding that the Army had acted with basis in fact.

### O'Brien v. Resor, No. 30,850

Lawrence P. O'Brien was inducted into the Army on September 5, 1969. He was then a graduate of the University of Notre Dame. After more than ten months on active duty, on July 14, 1970, he filed an application for discharge under Army Regulation 635–20 as a Class I-O conscientious objector.[4] O'Brien claimed objection to war in any form differed somewhat from that of Rothfuss. O'Brien based his application firmly on his alleged deeply-held belief in the teachings of the Roman Catholic church. He alleged that he had always been and was then a devout Roman Catholic; that he was educated in Catholic schools and universities; that he was always active in Catholic youth organizations, and that his uncle, a Catholic Monsignor, had been a guiding force in his life. O'Brien cited Catholic teachings recognizing the legitimacy of conscientious objection to war. O'Brien's claim was also supported by letters from relatives and civilian acquaintances. An Air Force Colonel and friend of the O'Brien family, Ward E. Cory, wrote to O'Brien's superiors stating his belief in the deep religious devotion of the entire O'Brien family. Chaplain Karry indorsed O'Brien's application with the same recommendation that he had made on behalf of Rothfuss.

After interviewing O'Brien, Captain Pittman stated his conclusion:

"PFC O'Brien states that he did not reach his decision to apply for discharge UP AR 635–20 until he received orders for the Republic of Vietnam. Although he may be sincere about his dislike for violence, I believe that his primary motivation is a natu-

ral concern for his wife and expectant child."

Colonel Chmar concurred in Captain Pitman's doubts about the sincerity of O'Brien's beliefs:

"Although PFC O'Brien received his schooling in religious institutions and comes from a family devoted to its religious beliefs, there is no indication that he held conscientious objector views until receiving his orders for Vietnam. During an interview, PFC O'Brien was queried as to his statement that he was a I-A-O after completing basic training and upon receiving orders to the Vietnamese language school here at Fort Bliss. He stated that he held this belief in his own mind, but had not officially communicated his position to anyone in authority.

"The sincerity of the application is questioned based on the time of submission and after having served 10 months in the Armed Forces. In addition to PFC O'Brien's application, two of his classmates submitted I-O requests at the same time."

On September 16, 1970, O'Brien's application was disapproved by the Adjutant General of the Army with the notation that "Applicant's professed views are not truly held". Without holding a hearing, the district court found that the Army had acted with basis in fact in denying the claimant's request and dismissed the petition for writ of habeas corpus.

### The Issues

In these cases we are required to review the district court's conclusion that the Army has a basis in fact for holding that the applicants were not sincere in their objections to participation to war.[5] We recently noted that while our scope of review of conscientious objector

---

4. See footnotes 1 and 2, supra.

5. Claims of conscientious objection to military service by a serviceman are governed by the same standard of review as pre-induction claims to entitlement to conscientious objector status. Application of Tavlos, 5 Cir. 1970, 429 F.2d 859; Pitcher v. Laird, 5 Cir. 1970, 421 F.2d 1272.

claims is limited, the Army has not a license to treat such applications arbitrarily and capriciously. Helwick v. Laird, 5 Cir. 1971, 438 F.2d 959. We said in *Helwick*:

> "* * * the Board is not at liberty merely to disbelieve the claimant. There must be some facts in his application—hard, provable, reliable facts —that provide a basis for disbelieving the claimant".

*Helwick* also referred to a similar statement we made in Kessler v. United States, 5 Cir. 1969, 406 F.2d 151, 156:

> "* * * the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which substantially blurs the picture painted by the registrant and thus casts doubt on his sincerity, Batterton v. United States, 8 Cir. 1958, 260 F.2d 233."

■ Simply stated, then, once an applicant for conscientious objector status has made out a prima facie case, the reviewing officials, whether Selective Service boards before induction or Army review boards in a post-induction situation, may not deny the claim absent sufficient evidence in the record amounting to a basis in fact to justify such denial. United States v. Davila, 5 Cir. 1970, 429 F.2d 481; United States v. White, 5 Cir. 1969, 421 F.2d 487.

■■ Difficulty is encountered when we try to apply these principles to the records before us here. In both cases the applicants clearly made out prima facie cases for discharge by reason of conscientious objection. In both cases, the applications were denied on grounds of lack of sincerity, and the primary factor relied upon by the Army to establish basis in fact to doubt the applicants' sincerity was the timing of the filing of the claim, i. e., when shipment to Vietnam was imminent. We think that in reviewing the sincerity of

claimed conscientious objectors the Army can legitimately consider the fact that the application comes on the eve of deployment of the claimant to a combat zone. A contrary holding would run counter to all that we know about the instinct for self-preservation. Indeed we have held that in conscientious objector cases any fact which casts doubt on the veracity and sincerity of the applicant can be considered, and that the timing of the application is such a fact. United States v. Henderson, 5 Cir. 1969, 411 F.2d 224; Carson v. United States, 5 Cir. 1969, 411 F.2d 631; Accord, United States ex rel. Hemes v. McNulty, 7 Cir. 1970, 432 F.2d 1182; Packard v. Rollins, 8 Cir. 1970, 422 F.2d 525; Salamy v. United States, 10 Cir. 1967, 379 F.2d 838. Cf. Ehlert v. United States, 1971, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 [April 21, 1971]. We conclude, nevertheless, that the timing of an application, as a solitary fact without other support in the record, is by itself not enough to provide a basis in fact for rejection of a prima facie showing of conscientious objection. United States ex rel. Brooks v. Clifford, 4 Cir. 1969, 409 F.2d 700; Johnson v. Resor, 321 F.Supp. 563 (D. Mass.1971). Cf. Bates v. Commander, First Coast Guard District, 1 Cir. 1969, 413 F.2d 475. *Contra* Speer v. Hedrick, 9 Cir. 1969, 419 F.2d 804.

The very existence of Army Regulation 635–20 is a recognition of the fact that crystallization of conscientious objector beliefs may occur as readily after induction as before. Further, the courts have recognized that crystallization may occur in the face of imminent induction or after considerable time spent in military service. United States v. Wingerter, 5 Cir. 1970, 423 F.2d 1015; Packard v. Rollins, supra; United States ex rel. Brooks v. Clifford, supra. One is entitled to suspect the motives of an applicant who has completed his basic training and other military assignments without incident, and belatedly objects when it appears that his personal safety may be jeopardized. Neverthe-

less suspicion alone cannot be enough. We think that clearly, in some situations at least, the impending prospect of having to fight and kill other human beings or having to cooperate with others in an effort to that end, may be the added ingredient which crystallizes beliefs in opposition to war. What we are saying is that at least potentially late filing of a conscientious objector claim is a two-edged blade. Determination of which way it cuts in any given case can only be determined by individual examination of the facts of that case. Simply to allow the timing of the application to stand alone as a basis in fact for a denial of a conscientious objector claim would be to impose an impermissibly different and higher burden of proof on the serviceman whose beliefs do not become firm until late in his military career. We recognize that conscientious objector status is a matter of legislative grace, but we find nothing in the legislation or the Army Regulations to support the proposition that a late conscientious objector claim is to be weighed differently than one filed soon after induction, provided the cases presented are equal in other respects. The *Henderson* case, supra, is not inconsistent with this holding. That case clearly reflects that under the law then existing the applicant's beliefs did not result from religious training and belief. 411 F.2d 227. Despite our statement in Carson v. United States, supra, that untimeliness of an application may be a basis in fact for the denial of a claim, the facts of that case indicate that Carson failed to sustain his burden of presenting a prima facie showing of conscientious objection because his objection to war was not unconditional. In neither case was the un-

timeliness of the application the sole factor for affirming the denial of conscientious objector status.

If the record before us revealed timing of the application as the only factor which cast doubt on the applicants' sincerity, our views set out above would militate that we reverse and remand this case with directions to grant the writs sought. Unfortunately the record in its present form fails adequately to reveal whether or not additional valid grounds existed for the Army's denial of the two applications. Rothfuss' record here contains a statement by Colonel Chmar to the effect that Rothfuss stated in his interview that he probably would not have filed his application had his overseas assignment been to Germany or Western Europe. Since Rothfuss filed an application claiming objection to combatant and concombatant service, such a statement if true *might*, when coupled with the timing of the application, be sufficient to provide the requisite basis in fact for the denial. In O'Brien's case Captain Pittman stated that he believed that the applicant was motivated by concern for his wife and child, and not by any sincerely held beliefs against war. We find nothing sufficient in the record as presented here to support the officer's conclusions as to insincerity. Since no transcript was made of the oral interviews with the applicants, we have no way of knowing what transpired in those meetings. It may be the interviewing officers' statements are accurate summaries of evidence developed in the interviews which would constitute basis in fact for the denials. To the contrary the conclusions may be bald speculation on the part of the officers.[6] We have no way on this record to know

---

6. In United States ex rel. Hemes v. McNulty, 7 Cir. 1970, 432 F.2d 1182, at 1187, the Seventh Circuit recently noted the difficulty in judicially reviewing actions of administrative bodies acting upon claims for conscientious objector status when the administrative body fails to state those objective facts which are the basis for its decision. That Court suggested that all would profit if the reviewing boards would "briefly summarize in the record those facts, whether they be inconsistencies in action or written statements, shifty or evasive demeanor, appearance of unreliability, lateness of claim or any other factors reasonably causing the board to reach its conclusion." We endorse the suggestion of our sister Circuit.

whether anything material happened at the interviews reasonably to cast additional doubt on the sincerity of the applicants. And we cannot accept the curious bootstrap argument of government counsel that we view conclusions of the interviewing officers as the basis in fact for those same conclusions. Here we have before us, as did the district court, no more than the application and supporting documents submitted by the applicants, and the naked conclusionary statements of the interviewing officers that they doubt the applicants' sincerity. If courts are properly to perform their function of judicial review of administrative action, they must have before them the complete evidence presented to the agency under review. One easy solution to this problem would be for the Army in each case to transcribe the interview with the applicant. We hope that consideration will be given by the military toward the adoption of such procedure. Since that apparently happened in neither of these cases, we are impelled to remand these cases to the district court with directions to conduct evidentiary hearings to determine what transpired at the interviews of the applicants which might have created additional doubt as to their sincerity. As indicated above, if the only credible evidence which cast doubt on the applicants' sincerity was the timing of their applications, the writs must be granted and the appellants discharged. If additional evidence is adduced, the district court should determine whether the sum total of the evidence as it then exists constitutes a basis in fact for the denials of the applications. In either event, complete findings of fact with resulting conclusions of law should be made.

As an alternative procedure (and one entirely acceptable to us), the district court in its discretion may find it preferable to hold the cases in abeyance and direct that the Army hold hearings for the development of such basis in fact as existed for the doubt expressed by the Board members as to the sincerity of the two appellants. Upon the report of such hearings to the district court, findings of fact and conclusions of law will again be in order.

 The point—indeed the essential thrust of our holding—is that upon a record made either in an Army hearing or a court hearing or both, facts must be developed to determine what bases in fact existed for the conclusionary views expressed by the members of the Army Review Boards involved in the two cases.

Upon remand the prior separate orders for stay enjoining removal of the petitioners from the jurisdiction of this Court pending appeal entered by different panels of this Court shall remain in full force pending termination of the further proceedings below. The district court is directed to enter such orders as are necessary to effect this result.

Vacated and remanded for further proceedings.