Michael P. HOPKINS, Petitioner-Appellant,

v.

James R. SCHLESINGER, Secretary of Defense, et al., etc., Respondents-Appellees.

No. 74–2691.

United States Court of Appeals, Fifth Circuit.

July 18, 1975.

John C. Swearingen, Jr., Columbus, Ga., for petitioner-appellant.

William J. Schloth, U. S. Atty., Charles T. Erion, Ronald T. Knight, Asst. U. S. Attys., Macon, Ga., for respondents-appellees.

Before COLEMAN, MORGAN and CLARK, Circuit Judges.

COLEMAN, Circuit Judge:

This is an appeal from the denial of a petition for Writ of Habeas Corpus. We affirm.

The petition was filed by Army 1st Lieutenant Michael P. Hopkins, who alleges that he is being wrongfully retained by the United States Army, in violation of its own regulation (AR 635–20 implementing DD1300.6V) which requires the Army to discharge persons who are conscientious objectors.

The Army, acting through its Conscientious Objector Review Board, refused to discharge Hopkins on the ground that he does not meet conscientious objector criteria since his beliefs are not sincerely held.

Hopkins graduated from the United States Military Academy at West Point, New York, and was commissioned on June 9, 1971. His first duty assignment was the Infantry Officers Basic Course which he completed on October 27, 1971. Hopkins then entered the Army's Airborne School, successfully completing the rigorous training in November, 1971.

His next assignment was the Ranger School. After eight weeks of Ranger training (the Ranger Course lasts nine weeks) Hopkins informed Army authorities that he could not continue:

I refused to continue Ranger training because I realized the insanity of my every action. I could go no further in learning techniques to destroy life when my every desire was to save human beings and live a life of nonviolence. This was the first time I had ever drastically rebelled against the military institution. After 5½ years of instant obedience I was quite naturally unsure of my position although quite sure that my basic underlying belief was in Christianity and nonviolence.

Nevertheless, Hopkins, at the time he withdrew from Ranger School, made no effort to secure release from the Army. He explained:

The Army was the only way to attend medical school and my true beliefs concerning my participation in a violent organization were subjugated to my desire to attend medical school.

After being reprimanded for failure to complete Ranger training, Hopkins was assigned to an infantry company as a platoon leader. He continued in this capacity for about a year—until March 23, 1973—when he obtained assignment as a Social Services Officer.

Sometime in early 1973—the record does not reveal the exact date—Hopkins' application to attend medical school under a special Army program was refused.[1]

---

1. Hopkins had been accepted to medical school before he graduated from West Point. He had once been accepted into the Army's medical school program but had been unable to attend because the acceptance came on short notice.

The refusal of Hopkins' application for the Army's medical school program was followed in short order—July, 1973—by Hopkins' submission of his resignation from the Army. Hopkins explained, "My belief had developed to the point where I could no longer actively support the military although I was still unsure of my exact stand regarding conscientious objection". The resignation was not accepted.

On January 4, 1974, Hopkins submitted his application for discharge as a conscientious objector. The application was accompanied by the statements of several fellow servicemen who expressed their opinions that Hopkins' beliefs are sincere.

Pursuant to Army regulations, an investigating officer was appointed, and numerous required interviews were held. The Army Chaplain assigned to the case reported that he was "completely convinced of Lt. Hopkins' sincerity". The investigating officer reported that:

As a result of my investigation, considering all statements, documents, records, interviews, and record of the hearing, I feel that 1Lt. Hopkins' beliefs are those of nonviolence and that he sincerely believes that he cannot partake in war or any part of the military service. His continued presence in the Army will only lead to greater conflict with his conscience and thus his benefit to the military will be minimal. I recommend that 1Lt. Michael Patrick Hopkins . . . be classified as 1–O conscientious objector and be separated from the military service.

The report of the investigating officer was accepted by Hopkins' Company Commander who opined that "the Army would be best served by releasing [Hopkins]." Hopkins' discharge was also recommended by Hopkins' Battalion Commander who focused on the detrimental effects on morale that Hopkins' continued service would cause:

Lt. Hopkins' retention in the Service would be a gross injustice to the many qualified and motivated reserve officers who are currently being relieved from active duty. His negative motivation is infectious and will have serious impact on the morale of those with whom he serves. I consider him to be an undesirable and would not want him assigned to my unit under any conceivable circumstances.

Hopkins' application for discharge, together with the above-described recommendations for approval, was then forwarded to Headquarters, Department of the Army. The forwarded record included the report of the hearings conducted by the investigating officer. The following are excerpts from that report:

1Lt. Hopkins said that his basic beliefs are in Catholicism and, as such, he interprets the message of the Supreme Being and His Son, Jesus Christ, as being that of love for all people and nonviolence. He stated that he believes that he was created in God's image and that he should follow the example set by Christ; the example of even loving those who hate you and persecute you. He feels it is wrong to conduct himself in any violent manner toward another human creation of God and that it is against God's will to be a part of any organization whose mission is to conduct warfare. He, therefore, says his beliefs are in direct conflict with being a part of the military service.

\*　　\*　　\*　　\*　　\*　　\*

The investigating officer asked how the applicant could go to West Point and become a commissioned officer and now feel the way he does. The applicant referenced his paperwork and how he was a part of a family of fourteen and went off to West Point when the opportunity arose. That he did not see himself as a trained killer and that during the final year or so at the academy he began to question his role. Then, as a commissioned officer he formulated his feelings more, but was not firm on all points. He would try to rationalize his being a part of the military. He pointed to his confrontation in Ranger School, where he came to the point where he could not

train to kill other human beings. After about nine months in an Infantry battalion, his ideas lead him to seeking a position in the Army Community Service as a social service officer. He feels that even this job, or any job within the Army, is making the Army ready to fight a war or making its members more able to go fight.

He has tried to become a doctor, but has had his application turned down by the Army. He thought, at one time, that he could rationalize his being in the Army by being a doctor. But he came to realize, through talking with military doctors, that he would be expected to serve as a military officer first and as a doctor second. His application to attend medical school, submitted while an officer, met with the response that he would probably be a very good doctor, but not a very good officer. As a military doctor he said he would be expected to be loyal first to the Army and then to himself. He said he would not, and could not, go to a war zone to patch up men to be sent back to fight. He feels this is insanity. 1Lt. Hopkins now feels that he cannot support the military in any role and that, as a soldier, he would be aiding the Army in its mission of warfare.

\* \* \* \* \* \*

A contributing factor that helped fix the applicant's alleged conscientious objection was a continued rejection by the Army for attendance at medical school for the apparent reason that he might make a good doctor, but not a good military officer. This rejection clearly indicated to him that under any circumstances medicine would be subordinate to the military. This he cannot accept and this eliminated the possibility for him to rationalize a role in the Army. Another event that fixed the applicant's objection was the recent mobilization during the 1974 Arab-Israeli War, when he realized clearly that he could be called to go to war and that he would not go. Though the applicant's attempted res-

ignation was largely based on the same nonviolent beliefs as stated in this application, it was rejected. This was due to the fact that his obligation was not over. The response to his resignation, from his branch chief at Department of the Army, pointed him to, based on his beliefs, applying as a conscientious objector.

The underlying basis for 1Lt. Hopkins' objection is a combination of his moral, ethical and Roman Catholic religious beliefs, as those beliefs reflect a completely nonviolent approach in all facets of life and, as he believes, does not allow him to be a part of warfare or to support the military.

The body designated by the Army as the final authority for reviewing conscientious objectors' applications—the Conscientious Objector Review Board— refused to credit the recommendations of the investigating officer or the opinions of the Army's line officers. After reviewing the submitted documents—but not conducting a hearing—the Board refused Hopkins' application for discharge. Although the Board's opinion is a detailed one, the basic reason for its decision is succinctly stated by a single sentence contained in the first page of the opinion: "[We find that] Applicant's professed views are not truly held."

The Board's opinion was issued on March 15, 1974. Hopkins' petition for Habeas Corpus was filed on April 26, 1974, and denied by the District Court on June 4, 1974. This appeal followed.

■ The law to be applied may be succinctly stated. The Army is under neither a statutory nor a constitutional obligation to provide for the discharge of a conscientious objector. However, once the Army promulgates a policy of allowing discharge on grounds of conscientious objection, it must apply that policy with an even hand. It cannot arbitrarily deny to some what it extends to others. See Pitcher v. Laird, 5 Cir. 1970, 421 F.2d 1272, 1278; Smith v. Resor, 2 Cir. 1969, 406 F.2d 141, 142; Brooks v. Clifford, 4 Cir. 1969, 409 F.2d 700, 706.

Nevertheless, the Army is allowed a wide discretion in making the factual determination as to whether a serviceman is truly a conscientious objector; i. e., in determining whether he meets the applicable regulation definition of being opposed to war in any form; which opposition is grounded in deeply held moral, ethical or religious beliefs; and which beliefs did not exist upon entering the service.

The Army's determination that a serviceman does not meet its test of a conscientious objector is final if there is a basis in fact for it. DeWalt v. Commanding Officer, Fort Benning, Ga., 5 Cir. 1973, 476 F.2d 440; Rothfuss v. Resor, 5 Cir. 1971, 443 F.2d 554; Helwick v. Laird, 5 Cir. 1971, 438 F.2d 959; Pitcher v. Laird, *supra.*

Here the Army found that petitioner did not meet the regulation's requirements for conscientious objector since his beliefs were not sincere. Is there a basis in fact for such a finding?

We are well aware that the *timing* of an application for conscientious objector status, standing alone, cannot provide a sufficient basis in fact for rejection of an applicant's prima facie showing of conscientious objector status, Rothfuss v. Resor, 5 Cir., 1971, 443 F.2d 554.

Even so, we agree with the District Court that all of the facts and circumstances in this case do provide a basis in fact for the finding that Lt. Hopkins' professed beliefs were not sincerely held, DeWalt v. Commanding Officer, Fort Benning, Georgia, 5 Cir., 1973, 476 F.2d 440; Helwick v. Laird, 5 Cir., 1971, 438 F.2d 959; Pitcher v. Laird, 5 Cir., 1970, 421 F.2d 1272. Sometime in late 1971 or early 1972 Lt. Hopkins rebelled against Ranger training, purportedly on conscientious grounds. Yet, he sought no release from the Service. He continued on for a year or more and took no action toward gaining his release until after the Army rejected his application to attend medical school under the auspices of the military. This was not "tim-ing"; it was objective, voluntary conduct, from which a finder of the fact could reasonably conclude as a fact that Lt. Hopkins wanted out of the service not because of reasons of conscience but because his prime objective of attending medical school had been frustrated.

The judgment of the District Court is Affirmed.