**Robert S. KURTZ, Plaintiff-Appellant,**
**v.**
**Melvin LAIRD, Defendant-Appellee.**
**No. 71-1082.**

United States Court of Appeals,
Fifth Circuit.

Sept. 29, 1971.

Rehearing Denied Oct. 28, 1971.

Leonard J. Schwartz, San Antonio, Tex., Jeremiah S. Gutman, New York City, Maury Maverick, Jr., San Antonio, Tex., for plaintiff-appellant.

Seagal V. Wheatley, U. S. Atty., Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., for defendant-appellee.

Before O'SULLIVAN *, THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

In his application for habeas corpus relief, appellant Kurtz sought to be discharged from the Army on the ground that subsequent to his entry into the service he became a conscientious objector. The Army's Class 1-O Conscientious Review Board disapproved appellant's application on the sole ground "that Kurtz is not opposed to participation in all wars, but is opposed to participation in a particular war." The District Court denied the writ of habeas corpus on the ground that appellant's "application, taken as a whole, could fairly be said to express opposition only to particular wars, and that there existed a basis in fact for the Review Board's denial of petitioner's application." After carefully reviewing the record, we affirm.

* Senior Circuit Judge, 6th Circuit, sitting by designaton.

Appellant is a physician currently serving in the Army. He joined the service during his internship at Johns Hopkins Hospital in 1968 pursuant to the "Berry Plan," a delayed-entry program, under which he received a commission in the Army Reserve and agreed to serve two years of active duty following his residency.

After two years of residency, appellant received orders to report for active duty on July 23, 1970. Approximately one week prior to reporting, he submitted an application for discharge under the provisions of Army Regulation 635–20 and Department of Defense Directive 1300.6, which set out the policy and procedure for considering applications of military personnel whose objections develop subsequent to their entry into the military service. See 50 U.S.C.A. App. § 456(j) (1968); United States ex rel. Brooks v. Clifford, 4 Cir. 1969, 409 F.2d 700, 702.

After reporting for duty as ordered, appellant was interviewed by an Army chaplain and another interviewing officer, both of whom believed that appellant was sincere and recommended that he be discharged. Appellant attached to his application letters from a former school teacher and a long-time friend that attested to his sincerity but said little about the precise nature of his beliefs. He also included a letter from his wife that stated that because of his beliefs, he could not "participate in the making of war in any capacity." Finally, he attached a letter from the national chairman of the Jewish Peace Fellowship, an organization for Jewish conscientious objectors, stating that appellant's application was completely harmonious with the teachings and traditions of Judaism. Appellant's Commanding Officer and Commanding General, however, without personally interviewing him, recommended disapproval of his application.

An applicant for classification as a conscientious objector must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168, 1971; that his opposition is based upon religious training and belief, as that term has been construed, Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308, 1970; United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, 1965; and that his objection is sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, 1955. The Government has conceded that appellant satisfied the latter two tests. Thus the only issue before this Court is whether Kurtz showed that he is conscientiously opposed to war in any form.[1]

After reading Dr. Kurtz' conscientious objector application, we are convinced that he is deeply committed to the beliefs that he holds. Nevertheless, we believe that the Congressional definition of the conscientious objector exemption, 50 U.S.C.A. App. § 456(j) (1968), and the limitations on our reviewing power, Helwick v. Laird, 5 Cir. 1971, 438 F.2d 959, require us to affirm the lower court. In *Helwick*, this Court said

> Federal courts have a narrow range within which to review the conscientious objector claims of active military personnel. * * * [O]ur scope of review is limited to ascertaining whether there is any basis in fact for the Army's finding that an individual has not presented a valid conscientious objector claim.
>
> \* \* \* \* \* \*
>
> \* \* \* [T]he Board is not at liberty merely to disbelieve the claimant. There must be some facts in his application—hard, provable, reliable facts—that provide a basis for disbelieving the claimant.

*Helwick* at 962–963.

---

1. Paragraph 3b of Army Regulation 635–20 provides that requests for discharge growing out of experience prior to entering military service, but which did not become fixed until entry into the service, will not be favorably considered when "based on objection to a particular war."

■ There was, unquestionably a "basis in fact," "hard, provable, and reliable," for the Army Review Board's determination that Dr. Kurtz is not opposed "to war in any form." The facts on which we rely to uphold the Army Review Board's decision come from Dr. Kurtz' conscientious objector application, and are the same facts upon which the Army Review Board relied. We quote from the application:

> [T]o be against the war in Vietnam is really to be against all wars, because the characteristics of this war are a prototype and a model of present and future wars in the world as it exists today. War for the rest of the century appears to be of the guerrilla type with overtones of conventional war supported by the great powers and the threat of thermonuclear destruction always in the background. One cannot oppose the massive violence committed against the Vietnamese and yet feel it possible to participate in any other conceivable war.
>
> * * * [T]his war is, in capsule, all wars conceivable to me * * *.
>
> * * * Modern warfare implies unlimited destruction and murder in which I cannot participate.

We do not believe that Dr. Kurtz' beliefs, as he himself defined them, can be said to fit within the definition of "opposition to war in any form." His position is that he is opposed to "war as we know it today." We do not believe that opposition to "war as we know it today" is what Congress meant when it enacted the "war in any form" standard. Moreover, we agree with the judge below that an examination of Dr. Kurtz' C-O application reveals "that in nearly every case [Dr. Kurtz] conditioned his statements [opposing participation in war] by references either to the Vietnam war directly, or to his own views on the characteristics of that war," and conclude that one could infer from Dr. Kurtz' application that he would not object to participation in a war waged with less sophisticated weapons, a war that did not result in the large-scale killing of innocent civilians or a war waged as a matter of national survival rather than as an "instrument of policy."

Affirmed.

O'SULLIVAN, Senior Circuit Judge (specially concurring):

I concur in affirmance of the District Court. However, with great respect for my brothers' views, I feel constrained to separately expose some impressions gained from my study of the record. My brothers' opinion sets out two essentials to appellant's right to be discharged. First, that his opposition was based upon "religious training and belief" and, second, "that his objection is sincere." The opinion then states that "The Government has conceded that appellant satisfied the latter two [as above] tests." I do not read the record as containing a concession by the government that appellant's "objection is sincere." The District Court's opinion did state:

> "*Most* of the evidence in the record *tends* to show that petitioner is sincere in his beliefs, and the Court does not understand the Government to be contending otherwise." (Emphasis supplied.)

This is true. *Most* of the evidence did *tend* to show that appellant was sincere. I do not, however, read the quoted language as a finding by the District Judge that the appellant was sincere or that the government had conceded his sincerity. Appellant's evidence consisted of the many letters and other representations which he produced to support his claim. The Army Chaplain and the original interviewing officer indicated *their* belief in appellant's sincerity. Those documents did indeed constitute *most* of the evidence presented, and did *tend* to support his claim of sincerity. The government is not "contending otherwise." However, as set out hereinafter, the officials of the U.S. Army whose function it was to finally pass upon the validity of appellant's claim of conscientious objector status, did not be-

lieve in his sincerity, and such disbelief had factual foundation.

In my opinion, those charged with final responsibility refused Captain Robert S. Kurtz' application for discharge primarily because they just didn't believe his belated conversion from an opponent to the war in Vietnam to opposition to all wars. In my view, such disbelief and the Army's opinion that appellant was not opposed to "war in any form" were justified.

Appellant, a medical graduate, has at all times been a vigorous and conspicuous opponent of the war in Vietnam, but true conscientious objector status cannot be claimed unless applicant is "conscientiously opposed to participation in war in any form." Section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j). The validity of this statute was sustained in Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

In Helwick v. Laird, 438 F.2d 959, 963, this Court said:

"Therefore, in this case—indeed, as in all conscientious objector cases—the threshold question for review *is the sincerity of the claimant in objecting, on religious grounds, to participation in war in any form.* Sincerity is of course a subjective question. Witmer v. United States, 1955, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428, 434; United States v. Gernannt, 5 Cir. 1970, 427 F.2d 1157, 1159; United States v. Evans, 9 Cir. 1970, 425 F.2d 302, 305." 438 F.2d at 963. (Emphasis supplied.)

This Court went on to say, however, that a draft board or involved military authorities are not at liberty to disbelieve an applicant for discharge as a conscientious objector unless there be "some facts in his application—hard, provable, reliable facts—that provide a basis for disbelieving the claimant." 438 F.2d at 963.

In Kessler v. United States, 406 F.2d 151 (5th Cir. 1969), this Court said:

"[T]he disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which *substantially* (emphasis added) *blurs the picture painted by the registrant and thus casts doubt on his sincerity.* Batterton v. United States, 8 Cir., 1958, 260 F.2d 233." 406 F.2d at 156.

I believe that the history of appellant's short lived army career contains "hard, provable, reliable facts" and sufficiently "blurs the picture painted by [appellant]" to justify disbelief of appellant's claims and his sincerity in asserting conscientious objector status. From the moment of his first exposure to likelihood of real military service, Captain Kurtz has sought to avoid it. He first "applied to the National Institutes of Health and the Public Health Service as alternatives to two years service in the military, but not being successful in the application carried through on signing for the Berry Plan." (Appellant's own language). Under the Berry Plan, he joined the Army during his internship at Johns Hopkins Hospital in November, 1968. Under this plan he received a commission in the Army Reserve—the record is unclear whether his first commission gave him the rank of Captain—and agreed to serve two years of active duty following his internship. He thus avoided the draft and postponed active military service for a period of two years. The District Judge's statement that,

"He [Kurtz] candidly admits in his application for discharge that he applied for the Berry Plan to avoid being drafted after his internship year."

is not challenged here.

It is, of course, obvious that had Kurtz claimed conscientious objector status when he sought the benefits of the Berry Plan, he would not have been accepted. He accepted a commission in the United States Army, wore its uniform with the early obtained bars of his

Captain's rank, and accepted officer's pay until the imminence of the end of the Berry Plan. The record does not tell us whether there are any additional perquisites available under the Berry Plan. His application recited that his opposition to the Vietnam war "remained steadfast through the two years at Johns Hopkins." He said that in early 1970, he became aware that he would be activated in July, 1970, the time when the benefits of the Berry Plan would terminate and the "quid pro quo" therefor—two years service in the Army—would commence. He stated that it was then that "the immediacy of my relation to the military hit home to me." Application at that time for discharge as a conscientious objector—one opposed to participation in "war in any form"—if successful, would have terminated continued enjoyment of the perquisites of the Berry Plan. He outlined his feelings about *the* war in two letters written to his superior officer, stating in substance his continued belief that the Vietnam war was wrong and that his conscience would not permit participation in it, "but that I could serve elsewhere in the armed forces." By the latter observation he insured continuance of the benefits of the Berry Plan until he would be ordered to report for active duty in July. He was directed to report on July 23, 1970. His application for discharge was made on or about July 16, 1970. He therein recites that he was examining his thoughts during the five months that intervened between his letters which said he could serve in the armed services and the time at which he would have to begin the service he promised. He concluded that after discussing his thoughts "with my colleagues and family and considering my own role in Vietnam," it became clear to him "that to be against the war in Vietnam *is really to be against all wars.*" (Emphasis supplied.)

He provided some letters from friends and relatives which recited the writers' confidence in the sincerity of appellant's religious and other beliefs, including his opposition to the Vietnam war. Only a letter from his wife set out his opposition to all wars. His own application contained an extensive dissertation on war and other things. The District Judge characterized—correctly, I believe—Kurtz' expressed opposition to *all* war as *ambivalent.* Some passages of the application can be read as opposition to all wars. Much of it, however, does no more than give expression to thoughts that are held by all right thinking people—abhorrence of war as a method of resolving conflicts between the peoples of this earth. If such was the test, all decent people would be classified as conscientious objectors.

In the processing of appellant's application, reports were made by the hearing officer, Major Conway and the unit's Chaplain, Major Phillips. Both expressed confidence in appellant's sincerity. The Chaplain's report concluded:

"I would hope * * * that Captain Kurtz would be given the opportunity to discharge his responsibilities to his country by serving in some other capacity not related to the armed forces."

The Hearing Officer's report stated:

"It is my recommendation that this officer's request for discharge be favorably considered and he be directed to complete his *military obligation* in some other capacity." (Emphasis supplied.)

Neither of these reports assert that appellant is opposed to "war in any form."

The record contains impressions gained by the army officers who joined in denying appellant's application. Unsure of their chronological order, we set out some of their observations:

"Appl * * * by Cpt Robert S. Kurtz, * * * US Ireland Army Hospital, Ft. Knox Ky, is disapproved. 'Applicant's request is based solely upon considerations of policy, pragmatism, or expediency.' "

This message came from a Major Rodney E. Hurt, AGC-Chief.

In a document identified as "Opinion of the Board in the case of Robert S. Kurtz" I find this:

"Given this long history of strong opposition to the Vietnam war, together with his effort to renege on his obligation to the Army under the Berry Plan in opposition to the war in Vietnam, and his further denunciation of the present war contained in his application, *that his self-serving declaration that he is indeed opposed to all wars does not ring true.*" (Emphasis supplied)

An excerpt from the recommendation of one Clark B. Williams, Colonel, MC, Commanding, reads:

"At the time he signed and made his election to accept the Berry Plan, he was a well educated man in his mid-twenties completing medical school. CPT Kurtz' service as an anesthesiologist and a part of a medical team effort to save lives is not expected to severely affect his emotional state nor irreparably blunt his conscience. Particularly noteworthy of CPT Kurtz, document and description of his ethical beliefs and tenets of his religion is the omission of any reference to such important qualities as 'honor and integrity.' Reneging on his Berry Plan contract would appear to indicate that CPT Kurtz subjugates word of honor and integrity to a professed antipathy to international conflict."

Final denial of appellant's application appears in a document coming through the Commanding General, Fort Knox, Kentucky. Its finality is evidenced by its designation as an "Order of the Secretary of the Army."

"Applicant's request is based upon objection to a particular war rather than opposition to war in any form."

In summing up these various reports, the District Judge said:

"Petitioner's Commanding Officer and Commanding General both recommended disapproval of the application, the former because he apparently considered petitioner's attempt to escape his obligation under the Berry Plan inconsistent with the honor and integrity a sincere conscientious objector would be expected to possess, the latter because he thought petitioner was opposed only to the Vietnam war and not to all wars. There is no indication that either of these officers interviewed petitioner personally. Thereafter, upon consideration of the entire record, the Review Board disapproved petitioner's application on the ground previously stated."

I am satisfied that appellant's total conduct justified disbelief by the Army authorities both of appellant's sincerity and his claim of opposition to "war in any form." I am satisfied that this disbelief and denial of appellant's application are supported by "hard, provable, reliable facts" clearly emerging from this record; there is ample evidence "which substantially blurs the picture painted by the [appellant]." The District Judge acted in obedience to the commands of this Court in Helwick v. Laird, *supra*, 438 F.2d 959, 963, as set out above. His opinion, filed January 8, 1971, well articulates the validity of his reasoning. I quote this much of it:

"While disapproval of the war in Vietnam is not itself inconsistent with conscientious objection to participation in armed conflict, Kessler v. United States, 406 F.2d 151 (5th Cir. 1969), and Congress had in mind 'actual military conflicts between nations of the earth in our time' when it enacted Section 6(j) of the Selective Service Act, Sciurella [Sicurella] v. United States, 348 U.S. 385, [75 S.Ct. 403, 99 L.Ed. 436] (1955), it is equally certain that one claiming conscientious objection may not successfully assert beliefs, no matter how sincerely they may be held, that do not amount to the sweeping declaration against war in any form demanded by the statute. This Court is of the opinion that petitioner's application, taken as a whole, could fairly be said to express opposition only to particular wars, and that there existed a basis in fact for the

Review Board's denial of petitioner's application. See Carson v. United States, 411 F.2d 631 (5th Cir. 1969); United States v. Army [Curry], 410 F.2d 1297 (1st Cir. 1969)."

He was the fact finder and his findings are not clearly erroneous. We are not at liberty, therefore, to set them aside. 52 Fed.R.Civ.P. I find no fault in his conclusions of law.