**Captain Irvin R. JENNINGS, M.D.**
**v.**
**Secretary of Defense, Melvin LAIRD et al.**
**Civ. A. No. SA-71-CA-183.**

United States District Court,
W. D. Texas,
San Antonio Division.
Nov. 4, 1971.

Gerald H. Goldstein, Levey & Goldstein, San Antonio, Tex., for petitioner.

Henry Valdespino, Asst. U. S. Atty., William Steele Sessions, San Antonio, Tex., for respondents.

MEMORANDUM OPINION AND ORDER

JOHN H. WOOD, Jr., District Judge.

Captain Irvin R. Jennings, M. D., Army Medical Corps, who is presently stationed at the United States Army Medical Field Service School, Fort Sam Houston, Texas, filed a Petition for a Writ of Habeas Corpus in this Court, alleging that he should be discharged from the United States Army as a Conscientious Objector. A hearing was held on August 26, 1971.

After graduation from Yale College in 1963, Petitioner entered Case-Western Reserve University Medical School where he remained until his graduation in 1968. Petitioner entered his internship at Cleveland Metropolitan General Hospital, Cleveland, Ohio, in 1968, where he remained until completion of his pediatric internship program. He was appointed a Commissioned Officer of the United States Army Medical Corps on November 12, 1968. In December of the same year, Petitioner enlisted in the U. S. Army Delayed Entry Program under the "Berry Plan". Thereafter, Petitioner began his residency program as a psychiatric resident at the Queen's Medical Center, Honolulu, Hawaii. The Department of the Army notified Captain Jennings by a letter dated October 1, 1969 that he had been selected for entry on active duty upon completion of his current delay which would terminate in 1970. In February of 1970, the Peti-

tioner informed the Army by letter that he desired to file an Application for Discharge as a Conscientious Objector. He received a letter in reply from the Army dated March 4, 1970 with instructions as to how to proceed with the preparation and filing of his Application. On September 2, 1970, the United States Army ordered Captain Jennings to report to active duty on November 5, 1970 to the Army Medical Field Service School, Brooke Army Medical Center, Fort Sam Houston, Texas. On September 3, 1970, the Petitioner filed his Application for Discharge as a Conscientious Objector under the provisions of Army Regulation 635–20.

Petitioner's Application for Discharge is based on moral and ethical beliefs. He states, "I do not claim to be religious or atheistic, only humanistic." In describing the crystallization of his views, Petitioner stated:

> "Experiences such as seeing the shocking pictures of the My Lai Massacre made it impossible for me to ignore that question. Coming at a time when I was gaining increasing awareness of my values (Petitioner was undergoing psychotherapy which he states gave him the self-awareness responsible for the initiation of this claim), I reexamined the justifications for war and killing I had thought I believed in * * * There soon developed the strong conviction that killing is never justifiable. It was as though I had just come upon a simple, yet profound truth. How could I live according to Christian standards and devout (sic.) myself to preserving people's health and well being as a physician, yet approve killing in any form?"

Captain Jennings' Application is supported by five letters of support from fellow workers at the Queen's Medical Center in Honolulu, Hawaii. In its Opinion dated May 24, 1971, the Conscientious Objector Review Board denied the Application for Discharge, stating that:

> "* * * the applicant lacks depth of conviction required to qualify for discharge as a Conscientious Objector. He has not clearly established that his conscience, spurred by deeply held moral, ethical or religious beliefs would give him no rest or peace if he allowed himself to remain a part of an instrument of war."

As part of their findings and conclusions, the Review Board states that it relies in part upon the statements of a Chaplain and a psychiatrist; that the psychiatric examination required by AR–635–20 revealed no psychiatric disorder which would warrant treatment or disposition through medical channels. The psychiatric report showed in part as follows: "This man seems sincere in his beliefs." This statement on sincerity is disregarded by the Court and this Court disregards whatever weight the psychiatrist's statement on sincerity was given by the Conscientious Objector Review Board. This is in conformance with Lovallo v. Resor, 443 F.2d 1262, at page 1263 (2nd Circuit, 1971) wherein the Court stated:

> "The examining psychiatrist is required to do no more than determine that the applicant is free from psychiatric disorder. AR 635–20(4) (b) (2); United States ex rel. Sheldon v. O'Malley [137 U.S.App.D.C. 141], 420 F.2d 1344, 1346–1347 (1969)."

The Review Board, relying in part upon the statement of Chaplain James R. Linderman, notes:

> "The interviewing Chaplain feels that Captain Jennings is sincere in his expressed feelings. Yet the Chaplain casts some doubt upon whether the applicant's professed beliefs are held with the requisite depth of conviction. He states, 'I do not think his philosophy is completely finalized. He is still looking and searching for logical and moral reasons to life's problems.'"

The Review Board also cites Brigadier General Vogel as well as the Command-

ing General of the Fourth U. S. Army, who believed the applicant's delay in submitting his Application and the fact that it was timed just prior to his entry on to active duty casts doubt upon the depth of his beliefs and indicated that he was somewhat motivated by considerations of expediency rather than deeply held moral or ethical beliefs. The Board goes on to state:

> "Even though he indicates he is against killing, he was able to accept a Commission and the benefits involved therein, consistent with his conscience. He became part of the military while keeping clear of the draft so he could finish his advanced training."

Another ground for denial of Petitioner's application cited by the Review Board concerns his refusal to participate in a Selective Service Civilian Work Program for Conscientious Objectors. The Board stated:

> "His opposition to service is because he feels he can be of greater benefit to his country and himself by remaining free and independent. Such a decision does not support conscientious objection and casts some doubt upon the depth of conviction of the applicant's religious, moral or ethical beliefs against participation in war in any form."

According to the recent authorities, Captain Jennings must satisfy three essential pre-requisites in order to substantiate his claim for conscientious objector status. Judge Thornberry's opinion in Kurtz v. Laird, 449 F.2d 210, 5th Cir., 1971 in holding that the applicant, Kurtz, "is not opposed to war in any form", said:

> "An applicant for classification as a conscientious objector must satisfy three basic tests. He must show *that he is conscientiously opposed to war in any form,* Gillette v. United States, 401 U.S. 437 [91 S.Ct. 828, 28 L.Ed.2d 168], 1971; *that his opposition is based upon religious training and belief,* as that term has been construed, Welsh v. United States, 398 U.S. 333 [90 S.Ct. 1792, 26 L.Ed.2d 308], 1970; United States v. Seeger, 380 U.S. 163 [85 S.Ct. 850, 13 L.Ed.2d 733], 1965; and *that his objection is sincere.* Witmer v. United States, 348 U.S. [375, 75 S.Ct.] 392, [99 L.Ed. 428], 1955 * * *" (Emphasis supplied)

Based on the evidence in the record, the Petitioner's description of his beliefs, and letters of support which accompany his Application, it is the opinion of this Court that the Conscientious Objector Review Board properly drew adverse inferences that Petitioner's claim was based on expediency. It is sufficient to contradict an applicant's sincerity and good faith belief with some inference of insincerity or bad faith according to *Witmer,* supra. A finding of expediency by the Board in this case is such an adverse inference. In other words, Petitioner has failed to meet the standards set forth above in *Kurtz* and patently has not passed the third basic test, i. e. "that his objection is sincere", or as in this Welsh type case, that he has the required depth of conviction. The fact that Captain Jennings postponed the filing of his Application until September 3, 1970, a period of seven months, further presents a proper basis in fact for denial as it indicates a compromising of conscience sufficient to cast doubt on the claim and is highly relevant. Further adverse inferences may be properly drawn from the letters of support submitted by Petitioner. None of these letters refer to Petitioner viewing the pictures of "My Lai" or accounts of atrocities in Vietnam as evidence of crystallization of his beliefs opposing war in any form. For example, Miss Mary I. Nelson, who participated with the Petitioner in an intensive sensitivity training session and worked with Petitioner as a professional associate, stated that she had never discussed his personal convictions. Therefore, as the Fifth Circuit declared in Carson v. United States, 411 F.2d 631, at page 633 (Fifth Circuit, 1969) citing the United States Supreme Court in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428

(1955) and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965):

> "Any fact which casts doubt upon the sincerity of the registrant's claimed belief is relevant."

Furthermore, the Petitioner's refusal to participate in the Civilian Work Program may reflect unfavorably upon his sincerity and may be considered as an adverse inference in the case before the Court. Where Petitioner has specialized in psychiatry and could no doubt fulfill a great humanitarian service in our Federal mental institutions in an atmosphere seemingly compatible with his training and beliefs, his desire to be free and independent and refusal to serve in the program presents a posture of insincerity, expediency and pragmatism.

The Application of Captain Jennings is based on moral and ethical views and the record in this case clearly shows that Petitioner has not met the "Welsh test" set out by the Supreme Court in Welsh v. United States, 398 U. S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) which states that an applicant must clearly establish that his conscience, spurred by deeply held moral, ethical or religious beliefs would give him no rest or peace if he allowed himself to remain part of an instrument of war. Therefore, the delay in filing the Application and the apparent compromising of conscience, the refusal to participate in a Civilian Work Program, and the adverse inferences that may be drawn from the several reference letters and the Chaplain's statement indicate that the Review Board's decision is based on hard, provable, reliable facts in the record as required by Helwick v. Laird, 438 F.2d 959 (Fifth Circuit, 1971) and that there is a basis in fact as required in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) to sustain the Review Board's decision.

The Order of September 22, 1971 denying the Petition for Writ of Habeas Corpus and dissolving the Temporary Restraining Order previously entered herein is incorporated with and made a part of this Memorandum Opinion and Order.